[No. 2,017.]

# FERDINAND ROSEMAN AND L. L. HOWLAND *v.* JOHN CANOVAN AND JOHN SANBORN.

FRAUDULENT SALE OF WOOL—ACTIVE CONCEALMENT OF DEFECTS BY VENDOR—DAMAGES.—Where the seller of wool in sacks knew that it had been rained on and was badly damaged, and that for the purpose of concealing its real condition the fleeces had been turned outside in and so packed; and the purchaser, when making an examination, cut a few inches into several of the sacks without discovering the damage, but remarked the extraordinary weight of the sacks and water stains upon them; and in answer to his inquiries as to these circumstances indicating damage, the seller said that the wool had not been rained on, so far as he knew, and had not got wet; that the weight was occasioned by extra good packing, that the water stains arose from sprinkling the sacks to make them hold more, and that all the wool, so far as he knew, was as good as that examined: *Held*, that though the rule of *caveat emptor* might apply if the seller had remained silent, yet under the circumstances and on account of the active concealment and artifice of the seller, he was responsible in damages for a fraudulent misrepresentation.

"CAVEAT EMPTOR" NOT APPLICABLE WHERE ARTIFICE USED TO PREVENT INQUIRY.—Unless there be warranty or fraud a purchaser of chattels cannot be heard to complain of conditions or defects open to his observation, or which he might have seen had he thought proper to make an examination for that purpose; in such cases the maxims of "*caveat emptor*" and "*qui vult decipi, decipiatur*" apply; but these rules have no application to a case in which the vendor resorts to a trick or artifice for the purpose of diverting the purchaser from the line of inquiry otherwise open to him, and which, but for such diversion, he might have followed.

"ALIUD EST CELARE, ALIUD TACERE."—Though a vendor of chattels may be excused from the obligation of pointing out defects or blemishes in the property he purposes to sell, he is not thereby at liberty to hinder or obstruct the purchaser in his attempts to find them out for himself.

FRAUDULENT MISREPRESENTATION ON SALE OF CHATTELS—ERRONEOUS INSTRUCTION.—In an action to recover damages for a fraudulent misrepresentation of the quality and condition of certain wool, which the plaintiff had been induced to purchase of the defendant, where there was evidence tending to show that defendant knew that the wool was damaged, and that by his false misrepresentations he induced the plaintiff to omit the examination for himself, which he would otherwise have made: *Held*, that an instruction to the effect that if plaintiff might by examination have ascertained the condition of the wool, defendant would not be responsible for concealing its condition, was practically directing a verdict for defendant, and was error.

APPEAL from the District Court of the Fifth Judicial District, County of San Joaquin.

The facts are stated in the opinion.
Plaintiffs appealed.

*Carr & Wilkes,* for Appellants.

Though Chancellor KENT says that " if defects in an article sold be open equally to the observation of both parties, the law does not require the vendor to aid and assist the observation of the vendee, and that even a warranty will not cover defects that are plainly the objects of the senses;" yet he proceeds in the very next sentence to say that "if the vendor says or does anything whatever with an intent to divert the eye or obscure the observation of the buyer, even in relation to open defects, he would be guilty of an act of fraud." (See 2 Kent, 484; 3 Blackstone, 165.)

In this case the wool was not equally open to the observation of both parties. It was packed into large sacks, weighing, on an average, three hundred and fifty-six pounds. The sacks themselves and the outside of the wool were dry, while the wool, near the center of the sacks, was wet, very dirty, and heating. The real condition of the wool could not be known by the vendees without laying the sacks open to the centers. This would have resulted in great inconvenience, as the sacks were lying upon the steamboat, and defendants took advantage of this fact. Under the circumstances the parties were not on an equality; neither was their knowledge nor their means of knowledge equal; and so, even without the representations by the vendor, the knowledge possessed and not communicated, but concealed by him, was a fraud upon the vendee. (2 Kent, 482; 1 Story Eq. Jur. Sec. 212.) Besides, the vendor was guilty of actual fraud in telling the vendee the wool was not wet, when in fact it was wet. His representations were made to induce, and did induce the

purchases, and were relied on by the vendee to his loss and the vendor's gain.

*D. S. Terry*, for Respondents.

The question of fraudulent representations was passed upon by the jury, and found in favor of defendants; and its finding on an issue of fact will not be reviewed by the appellate Court, where there is a conflict of evidence.

The plaintiffs seem to have proceeded under the civil law doctrine, that "sound price implies warranty of sound goods," as in their complaint they allege a purchase at the market price of good merchantable wool—an averment immaterial at common law, which permits a party to purchase at the lowest price he can, and imposes upon him the duty of examining and judging of the quality and condition of the goods, unless he chooses to require an express warranty. The rules of the common law were not framed to protect or favor ignorance or carelessness, nor to relieve the purchaser from the duty of exercising ordinary diligence in taking care of his own interests. While the common law affords to every person protection against fraud, it does not, in the apt language of KENT, "go to the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information. (2 Kent, 485.)

In *Parkerson* v. *Lee*, 2 East, 315, all the Judges held "that the rule of *caveat emptor* applied to the sale of all kinds of commodities; that without an express warranty by the seller, or fraud on his part, the buyer must stand all loss by latent defects, and that there was no instance in the English law of a contrary doctrine being laid down."

The doctrine contended for by plaintiffs would seriously embarrass commercial transactions, and lead to endless litigation. It would create obligations where none were intended to be assumed, and construe every word uttered by

a vendor in commendation of his goods into a warranty, when it was neither so intended by the vendor nor understood by the purchaser; it would take away from commercial men one great incitement to the exercise of judgment, activity, and diligence in their business, by giving them protection against the consequences of indolence, negligence, and folly.

In this case, it is clear from the evidence, that no words were used which were intended by the seller, or understood by the purchaser, to be a warranty of the condition or quality of the wool sold. After the seller had cut open some sacks, the purchaser took the knife and cut and examined till he was satisfied. The condition of the wool could have been readily ascertained by ordinary diligence and attention.

By the Court, WALLACE, C. J.:

· This is an action to recover damages for a fraudulent misrepresentation as to the merchantable quality and condition of certain wool sold by the defendants to the plaintiffs. The defendants had judgment below, and the plaintiffs, being denied a new trial there, bring this appeal.

The evidence tended to show that the wool was grown at the ranch of the defendants, in San Joaquin County, where it was sheared, and being put into sacks, was brought by them to Stockton, and placed on board the steamer there, with a view to its shipment to San Francisco. While it was lying on board the steamer at Stockton, the plaintiff, Roseman, and the defendant, Canovan, went to examine it, with a view to its purchase by the former. Some of the bales were cut into, and the wool opened upon the surface, and to the depth of two or three inches. It appeared to be

merchantable wool, dry, and looking well. Some of the sacks appeared to be stained upon the outside; and the testimony for the plaintiff tends to show that the attention of the plaintiff was awakened by that circumstance to the possibility that the wool might have been exposed to the rain, but that upon inquiry of the defendant, Canovan, upon that matter, the latter declared that the wool had not been rained on, that he knew of, and that it was throughout of as good a quality as the surface examination had indicated. After the price per pound had been agreed upon, it was found upon weighing the sacks that they were exceedingly heavy; and upon the plaintiff calling this fact to the attention of Canovan, and expressing his fears that the wool had got wet, the latter assured him that it had not, and that the large quantity of wool put in each sack was owing to the sacks having been sprinkled with a view to tight packing— which sprinkling, also, as the defendant said, accounted for their being stained on the outside. This is the purport of the evidence adduced by the plaintiff upon the point; and upon looking into the testimony of the defendant, Canovan, we do not perceive any substantial conflict. He states that after Roseman had got through cutting into the sacks in examining the wool, the latter inquired of him if all the wool was of the same quality, and that he replied that it was, so far as he, Canovan, knew. It is true that he states, in a general way, "I made no representations whatever to Roseman as to the quality of the wool;" yet he admits that when his attention was called to the stains on the sacks, he gave as a reason for their appearance that his "packer had sprinkled them to make them hold more." He admits, too, that he knew that some of the wool had got wet, and that he did not tell Roseman that fact when inquired of, but that when asked by the latter about the unusual weight of the sacks, he replied that they were "better packed, and therefore more wool in them, than common." He cannot recol-

lect that Roseman "inquired of him if the wool had been wet, but does remember that Roseman remarked the extraordinary weight of the sacks in which it was packed.

In point of fact, undisputed, the shearing of this wool was done in a muddy corral, without shed or covering—a portion of the time in the rain. Part of the wool sheared was so wet and muddy as to have been thrown away entirely. It was nearly all rained upon, more or less, during the shearing. Some of it was piled out with a view to being dried, and, in packing, the fleeces were rolled outside in. Defendant, Canovan, was personally present at the shearing, and cannot have been ignorant of these facts. Instead of having been tightly packed, the wool was found, upon its arrival at San Francisco (to which market the plaintiffs sent it immediately upon their purchasing it), to have been *poorly* packed. The bales averaged some three hundred and fifty-six pounds in weight, while, had they contained good wool, packed no more closely than this wool was packed, they would not have averaged more than about two hundred and fifty pounds. It was found, on examining the wool at San Francisco, that it was badly damaged, and unmerchantable, and that it was "packed wet, and very muddy and dirty"—"in a heating condition;" and the commission merchant to whom it was consigned there states that its condition in these respects could not have been detected without opening the bales.

The Court charged the jury as follows: "If, from the evidence in this case, you find that plaintiffs had an opportunity to examine for themselves, before purchasing the wool in question, as to its quality and condition, then it was their duty so to examine said wool as to ascertain for themselves the quality and condition of said wool; and plaintiffs cannot recover in this action unless you find from the evidence that defendants concealed from the plaintiffs the condition in some

particular which plaintiffs might not have ascertained from an examination of the wool for themselves."

The instruction as thus given to the jury assumed to lay down the rule by which the case of the plaintiffs, as they had attempted to prove it, was to be determined. The instruction must have assumed, of course, that at the time of the sale Canovan knew that the wool was wet and in a damaged condition, and knew, too, that Roseman was ignorant that such was its condition; that though Roseman, upon cutting into the surface of the sacks had failed to detect this fact, he did, nevertheless, discover the water stains upon the sacks themselves, and subsequently upon their being weighed, with a view to the purchase, his attention was drawn to the unusual weight of the sacks; that thereupon his suspicions were aroused that the wool had been exposed to the rain, and that to allay these suspicions and to induce him to complete the purchase Canovan represented to him that, so far as he, Canovan, knew, the wool had not been exposed to the rain; "that it had not got wet; that it was not wet; that the stains came on the sacks from their having been sprinkled in order to get more wool into them; that he was scarce of sacks, and that he had a superior packer, who could put more wool into a sack than any man he ever saw; that to make the sacks hold an extra quantity they had been sprinkled; that by these means more wool was put into such sacks than common, and that the sprinkling of the sacks and the tight packing, resulting in each sack containing more wool than common, constituted the reason for the sacks weighing heavier than they usually did." And the instruction must have assumed, too, that Roseman believed these representations of Canovan, and because he believed them, he laid aside his suspicions, and so was induced to purchase without further examination. The rule which would rather seem applicable to such a case was stated by Lord BROUGHAM in *Atwood* v. *Small*, in the House of Lords, as follows: "If

two parties enter into a contract, and if one of them, for the purpose of inducing the other to contract with him, shall state that which is not true in point of fact, which he knew at the time he stated it not to be true, and if upon that statement of what is not true and what is known by the party making it to be false, the contract is entered into by the other party, then, generally speaking, and unless there is more than that in the case, there will be at law an action open to the party entering into such contract, an action of damages, grounded upon the deceit," etc.   (6 Cl. and Fen. 232.)

The jury were here told in substance that it was the duty of the plaintiffs to thoroughly examine the wool, with a view to discover its condition, and that not having done so they could not recover.

But possibly the plaintiffs would have ascertained its condition except for the active concealment and artifice which their evidence tends to show was practiced by Canovan. Had the latter remained silent, and made no representations as to the condition of the wool; had he not undertaken to account for the weight of the sacks and the water stains upon them, and so to account for them, too, as to put to rest the expressed apprehensions of the purchaser concerning the condition of the wool, it might have been that the transaction would have fallen within the rule of *caveat emptor*, and so have involved no responsibility upon his part.   For unless there be warranty or fraud the purchaser cannot be heard, at least in Courts governed by the rules of the common law, to complain of conditions or defects open to his observation, or which he might have seen had he thought proper to make an examination for that purpose.   If under such circumstances he refuse to protect himself when, by lending his attention, he might do so, it is of his own choice—*qui vult decipi, decipiatur*.   But these rules have no application to a case in which the vendor has resorted to a trick or artifice

for the purpose of diverting the purchaser from the line of inquiry otherwise open to him, and which, but for the diversion, he might have followed, and so have protected himself from loss. If the vendor may innocently remain silent as to the quality or condition of his goods, he shall not, at all events, *ex industria,* mislead the purchaser in that respect. *Aliud est celare, aliud tacere.* If he is excused from the obligation to point out the defects or blemishes of the property he proposes to sell, he is not thereby at liberty to hinder or obstruct the purchaser in his attempt to find them out for himself.

Mr. BENJAMIN, in his recent most valuable work on sales, thus states the rule: "In general when an article is offered for sale and is open to the inspection of the purchaser, the common law does not permit the latter to complain that the defects, if any, were not pointed out to him. The rules are *caveat emptor* and *simplex commendatio non obligat.* * * * But the use of any device by the vendor to induce the buyer to omit inquiry or examination into the defects of the thing sold is as much a fraud as an active concealment by the vendor himself. (Pp. 315–16.)

It will be observed that the instruction as given by the Court wholly withdraws from the jury the question of fraudulent representation upon which the plaintiffs relied for recovery. The jury were told in substance that if the plaintiffs *might* by examination have ascertained the condition of the wool, then the defendants would not be responsible for concealing its condition. The defendants were only to be responsible for the concealment of something which the plaintiffs *could not* have found out by their own examination. Inasmuch as there was nothing concerning the quality or condition of the wool which the plaintiffs *might not have found out,* had Roseman cut deeper into the sacks, or insisted that they should be opened and the fleeces unrolled to his inspection, this instruction was practically an instruction to find a

verdict for the defendants.   The jury should have been instructed that if they believed that Canovan, knowing that the wool was wet and in a damaged condition, and knowing that the plaintiffs were ignorant that such was its condition, made the representation and statements already alluded to for the fraudulent purpose of allaying the suspicions of Roseman and inducing him to forego a further and more extended examination of the wool; and that, relying upon such representations and statements of Canovan, Roseman was thereby influenced and induced to purchase without making a further examination of the bales, then the defendants would be liable, and that the failure of Roseman to make further examination under such circumstances would constitute no defense to the action.

Judgment reversed, and cause remanded for a new trial.

Mr. Justice NILES did not participate in the foregoing decision.