[Crim. No. 128.   In Bank.—January 14, 1897.]

## THE PEOPLE, RESPONDENT, *v.* FRANK KLOSS, APPELLANT.

CRIMINAL LAW—HOMICIDE—CONVICTION OF MURDER IN FIRST DEGREE—SUPPORT OF VERDICT—CONFLICTING EVIDENCE—HABITS OF DRUNKENNESS—INSANITY.—Where a defendant is convicted of murder in the first degree, and the evidence for the people is amply sufficient to justify the inference that the killing was done with express malice, the verdict of conviction is sustained by the evidence, and conflicting evidence offered by the defendant to prove habits of drunkenness and insanity does not detract from the legal sufficiency of the evidence for the people.

ID.—REFUSAL OF INSTRUCTIONS—CONFUSION OF INTOXICATION AND INSANITY—CHARGE OF COURT.—Instructions requested by the defendant in relation to the plea of insanity are properly refused, where they confuse intoxication and insanity, and where the whole law of insanity, as applicable to the case, was fully and clearly given in the charge of the court.

ID.—INTOXICATION AT TIME OF KILLING—INAPPLICABLE INSTRUCTION.—Where it appeared from the evidence that the defendant was addicted to the use of intoxicating liquor, was frequently under its influence, and when so affected was abusive and quarrelsome, but there was no evidence that he was intoxicated at the time of the killing, other than that he had been drinking the day before the homicide, there is no evidence to sustain an abstractly correct instruction upon the law as to the effect of intoxication at the time of the killing, and such an instruction is properly refused.

ID.—NEW TRIAL—NEWLY DISCOVERED EVIDENCE OF INSANITY—CUMULATIVE PROOF.—A new trial will not be granted for newly discovered evidence respecting the insanity of the defendant, where such evidence is merely cumulative to the proof given on the trial.

ID.—WANT OF DILIGENCE—DISCRETION.—When the affidavits on the subject of diligence in the discovery of the new evidence are vague and general, and do not disclose the manner in which the evidence was discovered, and no explanation is given why it was not discovered before the trial, it is not an abuse of discretion to deny the motion for want of diligence.

ID.—INSANITY—INSTRUCTION—DUTY OF JURY—CAUTION.—An instruction as to the manner in which the law regards the defense of insanity, and as to the duty of the jury in relation thereto, and as to the degree of care and caution with which they should examine that defense, given in the form approved by the decisions of this court, does not invade the province of the jury as to matters of fact.

ID.—EFFECT OF INTOXICATION—INSTRUCTION—PENAL CODE—FELONIOUS INTENT.—An instruction as to the effect of intoxication given in the form of a transcript of section 22 of the Penal Code, with the exception that the jury were told that they "may take into consideration the fact that the accused was intoxicated at the time, in determining the felonious

motive or intent with which he committed the act," is not vitiated by
the insertion of the word "felonious" in the instruction, though not
used in the language of the code, the only intent in question in the case
being a premeditated and deliberate intent to take life which is a felo-
nious intent, if it existed.

Id.—Misconduct of Jury—Impeachment of Verdict—Affidavit of
Juror.—The affidavit of a juror cannot be received to impeach the ver-
dict to which he agreed, by swearing that he was misled by statements
of the foreman, and that he did not understand the verdict, and was
too timid and confused to express his dissent at the time when he ought
to have dissented.

Appeal from a judgment of the Superior Court of
the City and County of San Francisco and from an
order denying a new trial. George H. Bahrs, Judge.

The facts are stated in the opinion of the court.

*Thornton Woodbury*, and *Henry L. Wilson*, for Appel-
lant.

The motion for a new trial should have been granted,
as there was an entire failure to show intent to take life,
and there was no evidence of motive. (*People* v. *Ah
Fung*, 17 Cal. 377; *People* v. *Foren*, 25 Cal. 365; *People* v.
*Doyell*, 48 Cal. 97; *People* v. *Iams*, 57 Cal. 117; *People* v
*Knapp*, 71 Cal. 1; Pen. Code, secs. 189, 688.) While
drunkenness is not an excuse for crime, it is the duty
of the jury, where there is a question of premeditation,
to take into consideration intoxication, when such evi-
dence is introduced, to determine the degree of the
crime. (*People* v. *King*, 27 Cal. 514, 515; *People* v. *Har-
ris*, 29 Cal. 683; *People* v. *Williams*, 43 Cal. 352; *People*
v. *Blake*, 65 Cal. 278; *People* v. *Vincent*, 95 Cal. 428.)
The court erred in refusing to give defendant's pro-
posed instructions. (Ray's Medical Jurisprudence of
Insanity, 429–31.) And this error was not cured by
the fact that they were in substance given. (*People* v.
*Ramirez*, 13 Cal. 172; *People* v. *Taylor*, 36 Cal. 267;
*Sperry* v. *Spaulding*, 45 Cal. 544.) A new trial should
have been granted upon the ground of newly discovered
evidence. (*People* v. *Sutton*, 73 Cal. 243; *People* v. *Ur-
quidas*, 96 Cal. 239; Hayne on New Trial and Appeal,

secs. 87, 88; *People* v. *Stanford*, 64 Cal. 27.)  What con-
stitutes reasonable diligence, in any instance, must de-
pend upon the circumstances of the particular case.
(Hayne on New Trial and Appeal, sec. 92; *Arnold* v.
*Skaggs*, 35 Cal. 687; *Case* v. *Codding*, 38 Cal. 194; *Peo-
ple* v. *Ah Ton*, 53 Cal. 741.)  The court erred in its in-
struction to the jury on the question of insanity, as it
invaded the province of the jury.  (Pen. Code, sec. 1127,
and note; Const., art. VI, sec. 19; *McMinn* v. *Whelan*,
27 Cal. 319; *People* v. *Williams*, *supra*.)  It also erred
in its charge in regard to intoxication in using the
word "felonious."  (*People* v. *Vincent*, *supra*; *People* v.
*Lewis*, 36 Cal. 531; *People* v. *Williams*, *supra*; *People* v.
*Harris*, *supra*; *People* v. *Jones*, 63 Cal. 168; Pen. Code,
secs. 221, 1042, 1127; *People* v. *Nichol*, 34 Cal. 211; *People*
v. *Belencia*, 21 Cal. 544; *People* v. *Martinez*, 66 Cal. 278.)
The court erred in refusing to admit the affidavit of
juror Leipsic, showing misconduct on the part of the
jury.  (Const., art. I, sec. 7; Pen. Code, sec. 1042, note,
1140.)

*W. F. Fitzgerald, Attorney General,* and *Charles H.
Jackson, Deputy Attorney General,* for Respondent..

Actual intent to kill—express malice—is proved, and
a case of murder in the first degree is made out.  (*Peo-
ple* v. *Knapp*, 71 Cal. 8; Pen. Code, sec. 88; *People* v.
*Williams*, 43 Cal. 344; *People* v. *Ah Fung*, 17 Cal. 378;
*People* v. *Nichol*, 34 Cal. 211.)  While the jury may
take intoxication into consideration to determine the
degree of the crime, they are not compelled to find in
lesser degree from slight evidence upon the subject.
(*People* v. *Williams*, *supra*; *People* v. *Valencia*, 43 Cal. 552.)
Drunkenness cannot be given as an excuse for crime.
(*People* v. *Willims*, *supra*; *People* v. *Jones*, 63 Cal. 169;
*People* v. *Ferris*, 55 Cal. 592.)  Evidence of intoxication
to determine the degree of guilt must be received with
great caution.  (*People* v. *Lewis*, 36 Cal. 531; *People* v.
*Vincent*, 95 Cal. 428; *People* v. *Belencia*, 21 Cal. 544; *Peo-
ple* v. *King*, 27 Cal. 507; *Kenny* v. *People*, 31 N. Y. 33

*Jones* v. *Commonwealth*, 75 Pa. St. 403; *Swan* v. *State*, 4 Humph. 136; *Pirtle* v. *State*, 9 Humph. 663; *State* v. *Tatro*, 50 Vt. 483; *Hopt* v. *People*, 104 U. S. 631.) There was no error in refusing the instructions proposed by defendant. A close analysis of instructions should not be entered into. (*People* v. *Kernaghan*, 72 Cal. 612; *People* v. *Bruggy*, 93 Cal. 477; *People* v. *Etting*, 99 Cal. 577; *People* v. *Chun Heong*, 86 Cal. 331; *People* v. *Dodge*, 30 Cal. 450; *Boyce* v. *California Stage Co.*, 25 Cal. 460; *Commonwealth* v. *Webster*, 5 Cush. 320; *People* v. *Ashe*, 44 Cal. 288.) The newly discovered evidence, consisting of the testimony of Dr. E. Robbins, was merely cumulative, as testimony had been presented to the jury of the accident testified to by him, and this is fatal to a motion for a new trial. (*People* v. *Sutton*, 73 Cal. 247; *People* v. *Urquidas*, 96 Cal. 239.) A motion for a new trial is addressed to the sound discretion of the court, and its order will not be interfered with in the absence of an abuse of discretion. (*Manasse* v. *Dinkelspiel*, 68 Cal. 401; *Peters* v. *Foss*, 16 Cal. 357; *Quinn* v. *Kenyon*, 22 Cal. 82; *Hall* v. *Bark Emily Banning*, 33 Cal. 524.) The evidence must be so conclusive as to give rise to the presumption that if a new trial were granted it would change the result. (*McCormick* v. *Central R. R. Co.*, 75 Cal. 506; *Byrne* v. *Reed*, 75 Cal. 277; *People* v. *Sutton*, *supra; Parker* v. *Hardy*, 24 Pick. 246; *Pomroy* v. *Columbian Ins. Co.*, 2 Caines, 260; *People* v. *Superior Court*, 10 Wend. 288; *Ames* v. *Howard*, 1 Sum. 491; Graham on New Trials, 7; *Miller* v. *Ross*, 43 N. J. L. 552.) The instructions on insanity given by the court do not infringe upon the province of the jury. (*People* v. *Dennis*, 39 Cal. 625; *People* v. *Bumberger*, 45 Cal. 650; *People* v. *Pico*, 62 Cal. 50; *People* v. *Larrabee*, Crim. No. 158; *People* v. *Bruggy*, *supra; People* v. *Kernaghan*, *supra.*) The charge should be read as a whole. (*People* v. *Etting*, *supra; People* v. *Bruggy*, *supra; People* v. *Tarm Poi*, 86 Cal. 225; *People* v. *Morine*, 61 Cal. 370; *People* v. *Fehrenbach*, 102 Cal. 394; *People* v. *Bagnell*, 31 Cal. 409; *People* v. *Doyell*, 8 Cal. 85; *People* v. *Cleveland*, 49 Cal. 578; *People* v.

*Turcott*, 65 Cal. 126; *People* v. *Anderson*, 105 Cal. 32; *People* v. *Shaughnessy*, 110 Cal. 598.) The use of the word "felonious" in the charge is proper, as felonious motive or intent must be proven by the prosecution, and the court was suggesting the query whether the act was felonious or not. (*People* v. *Ribolsi*, 89 Cal. 498; *People* v. *Perini*, 94 Cal. 574.) A juror cannot impeach his verdict on such grounds as those stated in the affidavit of juror Leipsic. (Code Civ. Proc., sec. 657; *Boyce* v. *California Stage Co.*, *supra*; *Clark* v. *His Creditors*, 57 Cal. 640; *Fredericks* v. *Judah*, 73 Cal. 604; *People* v. *Azoff*, 105 Cal. 632; *People* v. *Gray*, 61 Cal. 164; 44 Am. Rep. 549; *People* v. *Deegan*, 88 Cal. 602; Pen. Code, sec. 1163; *People* v. *Rodundo*, 44 Cal. 538.)

BEATTY, C. J.—The defendant appeals from a judgment inflicting the death penalty for murder and from an order denying his motion for a new trial.

Numerous errors are assigned upon the rulings of the trial judge, and it is also contended that the evidence is insufficient to sustain the verdict.

The evidence for the prosecution was, in substance, "that on the morning of April 18, 1895, shortly after midnight, the defendant entered a barroom at the corner of Hayes and Laguna streets, in San Francisco, where were present the barkeeper, the deceased, and a party named David Middleton. The deceased and Middleton were asleep. Defendant aroused Middleton, and told him to wake up the deceased, which he refused to do. Defendant then said, 'I will wake him up,' and struck deceased two blows with a knife in the neck. When asked what he had done, defendant said, 'I have woke him up; I have fixed him; I have killed the son of a bitch.' A police whistle being blown, he again walked to the deceased and struck an additional blow, remarking, 'Dave, I have killed him; I have fixed the son of a bitch,' showing a knife, and throwing it on the floor. Subsequently, on being arrested, he admitted the stabbing, and when asked why he had done it, replied that

he would explain it at the proper time. It was also shown that about 9 o'clock on the evening of the 17th defendant entered the same saloon and inquired for the deceased, calling him a son of a bitch, and saying, in substance, he was not prepared for him at 6 o'clock, but he was then. From the effect of the wound the deceased died almost immediately."

The evidence was amply sufficient to justify the inference that the killing was unlawful, premeditated, and deliberate; or, in other words, that it was done with express malice, and the conflicting evidence offered by the defendant tending to prove habits of drunkenness and insanity does not detract from the legal sufficiency of the evidence for the people.

The following instructions were requested by defendand, and refused by the court:

"2. That if you believe this defendant, from a severe blow, or from any other cause, was an epileptic for some five years prior to April 18, 1895, and was also addicted to over-indulgence in intoxicating drink during the same period, and, for these reasons, was in such a mental condition as to prevent him from distinguishing between right and wrong at the commission of the act, then it is your duty to acquit him.

"3. That if you believe that the defendant was intoxicated at the time he committed this act, but before he became intoxicated he had not premeditated the killing, then it is your duty to take into consideration the extent of his intoxication, in determining whether or not it was of such a degree that he could not, at the time, premeditate the act.

"4. If you believe the defendant by reason of e] or long continued use of intoxicating liquors, such a condition of mind at the time he commi| act, even though that condition was temporary, could not distinguish right from wrong, you mus| him."

The court did not err in refusing these instru. Those numbered 2 and 4 are objectionable as instruc-

tions in relation to the plea of insanity, on account of the manner in which they confuse intoxication and insanity; and, even if they had been less objectionable in this respect, their refusal would have been harmless, for the reason that the whole law of insanity, as applicable to the case, was clearly and fully given in the charge of the court.

The instruction numbered 3 is a sufficiently clear and correct statement of the legal proposition applicable to a case in which it appears that the defendant was intoxicated at the very time of the killing. But in this case that material fact was not shown. It appeared from the evidence that the defendant was addicted to the use of intoxicating liquor, was frequently under its influence, and when so affected was abusive and quarrelsome. *"It also appeared that he had been drinking on April 17th."* This is absolutely all that is shown by the bill of exceptions in relation to intoxication at the time of the killing, and, in our opinion, is wholly insufficient to establish the fact. It does not show how much or how often he had been drinking on the 17th, or at what hour, or that he had at any time reached the stage of intoxication, and no doubt an habitual drinker might have partaken more than once on the 17th, and been perfectly sober on the 18th. In the absence of any substantial evidence of intoxication at the time of the killing, the superior court was justified in refusing this instruction.

One of the grounds of the motion for a new trial was newly discovered evidence touching the alleged insanity of the defendant.

Aside from the opinions of the experts (which were in direct conflict), the substance of all the evidence adduced at the trial in relation to defendant's insanity is stated as follows in the bill of exceptions:

"The defense then introduced evidence showing that defendant was addicted to the use of intoxicating liquor, and was frequently under its influence, and when so affected was ugly and abusive. It also appeared that on

April 17th he had been drinking. This evidence was introduced at the morning session of November 13th. There was no testimony of delirium, resulting from liquor, by those testifying in the morning. In the afternoon of November 13th a brother of the defendant took the stand and testified to the drinking of defendant, to his injury about the head, and to his having had frequent fits; none that he knew of away from home; these fits having some of the symptoms of epilepsy. No one but the brother testified to these fits. There was other testimony of his drinking, and of his being ugly and abusive when under its influence, and on one occasion that he threatened suicide in the presence of another brother."

The newly discovered evidence relied upon in support of the motion is all embodied in the following affidavit:

"Now comes E. Robbins, M. D., the affiant herein, and, being duly sworn, on oath deposes and says as follows, to wit: One evening about 8 o'clock, in the latter part of November, 1889, I was called to the Orpheum to see this defendant, who was on the stage, who, they said, they thought was dying. On personal examination I found that he was suffering from concussion of the brain and laceration of the cuticle of the forehead. I found a gash about six inches in length reaching from the table of the skull. He had a very profuse hemorrhage from the same. I then commenced to wash away the blood, stop the hemorrhage, and, on making a still further examination, I found that the table of the skull was slightly fractured, but not sufficient to trepan the same. I used antiseptics, cleansing the part thoroughly, put in a drainage tube, and then put in six stitches, saturated the part with iodoform, put on an adhesive bandage, and bandaged the same up in the regular bandages, and still the patient was unconscious. By this time the theater had closed. I then asked Mr. Walters if he had a room in the building where the man could lay, and he said he had one. I then requested the employees to take the young man to the

room.  I then wished to know how the accident hap-
pened.  They said he was winding up the scenery with
the windlass, and that the iron handle slipped out of his
hand and ran back and struck him on the head.  I then
said here is a case that we shall see, when he comes to
consciousness, whether he is sane or insane, for I quite
expected to find him permanently insane when he re-
turned to consciousness.  Two hours had elapsed when
he came to himself and commenced muttering incoher-
ently, talking about things entirely foreign to his busi-
ness.  He wanted to tear off the bandages, and it was
with difficulty that we kept his hands from his head.
He then said he suffered horribly, and did n't know what
had happened.  He finally came to consciousness, and,
with his friends around the bed, I told him then that if
he should ever drink to excess it would affect his brain,
and he would, in all probability, kill some person while
suffering from emotional insanity produced by liquor.
In five days I took out the stitches, and in two weeks
the wound was perfectly healed, at which time his con-
versation was, to a certain extent, rambling, and his
sentences disconnected.  From my knowledge of the
character of the blow, and my examination of the wound
where the skull was slightly fractured, it is my opinion
that this is the kind of a blow, and the sort of a fracture,
which would produce epilepsy.

(Signed)  "EDWIN ROBBINS."

It is conceded by counsel that this evidence was not
new, and that it was cumulative as to the occurrence
of the blows and injuries to the defendant's head, but
as to the pathological results—the resulting and per-
manent injury—he contends that it was not cumulative.
But we think it was, all the facts in regard to the acci-
dent being known to other witnesses, who testified at
the trial, and who presumably stated them to the jury,
the physicians who testified as experts had all the *data*
for an opinion that Dr. Robbins had, besides others
(the epileptic fits, habits of intoxication, etc.) that he
did not have; and defendant's expert testified to the

same opinion. The evidence of Dr. Robbins would, therefore, have been merely cumulative, and, for this reason alone, the superior court was justified in denying the motion upon the ground under consideration. And, besides, the affidavits are so vague and general on the subject of diligence, that we could not have pronounced it an abuse of discretion to have denied the motion on that ground. For aught that appears, Dr. Robbins was in San Francisco from the time of the accident to the date of the trial. The manner in which he was finally discovered is not disclosed, and no explanation given of the reason he could not be discovered during the six months which elapsed between the homicide and the trial. Considering the just disfavor and suspicion with which this ground of the motion is regarded, we think the affidavits as to diligence should have been more explicit than they were.

In the course of his charge to the jury the trial judge used the following language: "It is my duty to say to you, gentlemen, that against the defense of insanity the law entertains no prejudice. On the contrary, if it be established by a preponderance of evidence, the law accords to the accused the full benefit of it, and your duty will be to acquit him of all criminal responsibility by reason of his insanity. It may be true that this defense is sometimes resorted to in cases in which the proof of the overt act is so full and complete that any other means of avoiding conviction and escaping punishment seems hopeless. It may have been abused and used in cases of unquestionable guilt, and may have been an excuse for jurors acquitting when their own and the public sympathy has been with the accused party, and justified and excused, according to public sentiment, but not according to law. While, therefore, all this may be true, it is a defense to be weighed fairly, fully, and justly, and, when proven in the manner I shall state and explain to you, must recommend itself to the sense of humanity and the justice of the jury. You are to examine it with care and caution, however, lest

an ingenious counterfeit of this mental infirmity should furnish immunity from and perhaps defeat proper and just punishment."

Appellant contends that in this part of its charge the court invaded the province of the jury by instructing as to matters of fact. This criticism is, we think, entirely unfounded, and we may add that a similar instruction was approved by this court in *People* v. *Pico,* 62 Cal. 54, and in *People* v. *Larrabee, ante,* p. 158.

The trial judge also gave the following as a part of his charge: " Any act committed by a person while in a state of voluntary intoxication is not less criminal by reason of his having been in such a condition, but whenever the actual existence of any particular purpose, motive, or intent, is a necessary element to constitute any particular offense or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the felonious motive or intent with which he committed the act."

This is a literal transcript of section 22 of the Penal Code, with the exception of the word "felonious," which is interpolated near the end. The defendant contends that the addition of this word constitutes grave error. But we cannot understand in what respect. The only intent in question in this case was the premeditated and deliberate intent to take life, and certainly that was a felonious intent, if it existed. If the objection means that the court instructed the jury that there was in fact any such intent on the part of the defendant, we can only say that the charge will not bear that construction.

Another ground of the motion for a new trial was misconduct on the part of the jury. In support of this allegation the defendant offered to file the following affidavit:

" Now comes Isaac Leipsic, juror in the above-entitled cause, which was tried November —, 1895, and, being duly sworn, on oath deposes and says:

"That the verdict reached and rendered by the jury

in the above case, to wit, guilty of murder in the first degree, was not the verdict which the said Leipsic agreed to. That the said Leipsic was not only misled by the statements of G. T. Ruddick, the foreman of said jury, to the effect that the above verdict would not entail the death penalty of necessity, but also was improperly coerced, confused, and bewildered by the importunity of said Ruddick, and in effect caused to bring in a verdict which he did not understand and did not mean to bring in, and never agreed to. That much hubbub and confusion took place in the juryroom at the time of voting, and that when the jury had finally agreed on a verdict of guilty this deponent expressly stipulated that the penalty of life imprisonment be added to said verdict. That said foreman, G. T. Ruddick, against the wishes of said deponent, read out a verdict of guilty of murder in the first degree, without adding on the penalty of life imprisonment. And that, when said verdict was read by said foreman Ruddick, this deponent was so confused he did not at that time realize the situation he was placed in, and through a sense of embarrassment and timidity he, at that time, refrained from speaking out against said verdict in open court. That when said verdict was read and said jury was polled this deponent did not hear the question asked him if said verdict was his verdict, and he remained silent. That at all times after the jury had retired to the juryroom this deponent asserted his refusal to bring in a verdict which would hang this defendant.

"And that the foreman of said jury, well knowing this, so manipulated the ignorance and confusion of this deponent, and so hastily brought the jury into the box, that this deponent was brought to seemingly agree to a verdict he did not as a matter of fact agree to at all.

(Signed) Isaac Leipsic."

The court refused to allow this affidavit to be filed, upon the ground that a juror could not thus impeach his own verdict. This action by the court was entirely proper. The jury, before retiring to consider their ver-

dict, had been fully and clearly instructed as to the various forms of verdict they might render, and as to the meaning and legal effect of such verdicts respectively. When they came into court the verdict was read by the foreman, and recorded by the clerk, and then again read to the jury, who were asked if that was their verdict. No juror dissented, and the polling of the jury was waived. A juror cannot be allowed to impeach a verdict, to which he has thus assented, by swearing that he did not understand it, or that he was too timid and confused to express his dissent at the time when he ought to have dissented. (*Polhemus* v. *Heiman*, 50 Cal. 438, 441; *People* v. *Azoff*, 105 Cal. 632, and cases cited.)

No error appearing in the record, the judgment and order appealed from are affirmed, and the superior court is directed to fix a day for carrying its judgment into effect.

VAN FLEET, J., HARRISON, J., McFARLAND, J., HENSHAW, J., and TEMPLE, J., concurred.