THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JULIO CRUZ DEL VALLE, Defendant and Appellant.

No. 5783.  Argued December 13, 1935.—Decided February 28, 1936.

*Alfonso Lastra Charriez* and *Justo A. Casablanca* for appellant.  *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

The District Attorney of San Juan filed an information charging Julio Cruz del Valle with the crime of murder in that he maliciously killed Rufino Bosque, a human being, on February 18, 1934, in Santurce, San Juan, P. R.

On being arraigned he pleaded not guilty and asked for a jury trial.  He was tried on April 24, 1934, and the jury convicted him of murder in the second degree.  He moved for a new trial.  The court overruled his motion and on June

25, 1935, sentenced him to eleven years in the penitentiary. He took an appeal and in his brief he has assigned two errors claimed to have been committed by the court in overruling his motion for a new trial and in refusing to give instructions to the jury regarding the crime of involuntary manslaughter.

The evidence for the prosecution began with the testimony of doctor Arsenio Comas who performed an autopsy upon the body of Rufino Bosque. He found a bullet wound of exit on an arm and another bullet wound between the fifth and sixth ribs which penetrated the thorax, passed by the lower part of the left lung, and rested in the soft tissues over the tenth rib, producing an internal hemorrhage which resulted in death. The wounds might have been caused by the same bullet.

Next followed the testimony of the eyewitnesses Enrique Luis de Jesús, Angel de la Rosa, Eladio Meléndez, Arturo Méndez, and Arnaldo Paredes.

The first one, a child eleven years old, stated in short, that after a baptismal party and a dance held in a house at a place in Santurce, known as "La Zona," the owner of the house was talking to Saturnino López, about people who came to parties uninvited, whereupon the defendant came in "and said: 'Nobody is a tough guy (*guapo*) here, I am the boss, the terror of "La Zona," ' and he drew a revolver and fired four shots; he reloaded the revolver and came towards the dance floor .... all the time firing upwards and around him and the last shot hit Rufino Bosque .... who was in the corner of a railing on the street." There were there about two hundred people. To the question, asked on cross-examination by counsel for the defendant, "Was he shooting at someone?" he answered, "He was shooting at random."

The other witnesses, de la Rosa, Meléndez, and Méndez, testified more or less to the same effect, and the last witness, Paredes, stated that on February 18, 1935, "there was a baptismal party and it appears that there was some argument

between some of those present, between two of the people in the party, but it was soon over and the troublemakers were led away, one of them to his home, whereupon Julio Cruz appeared and said: 'What's the matter here? This is going to stop right now,' and then he fired four shots, and then he reloaded, walked around the dance floor and fired three more shots, hitting Rufino with the last one.'' On cross-examination by defendant he stated that Rufino was a peaceful man, a friend of the defendant, and that he had not taken part in the argument. That the defendant had had no argument with him. To the question ''Do you know whether the shot that killed Rufino was fired in front of him or behind?'' he answered: ''It went off like this.''

He then answered to the district attorney that the defendant fired 7 shots and counsel for the defendant said: ''Your Honor, the district attorney admits that our witness Talavera would testify that this defendant was a watchman in the reconstruction work, and as to the other part of the theory of the defendant we make our own the evidence for the prosecution, and I submit the case without argument.''

Then he requested the court to instruct the jury ''regarding Involuntary Manslaughter, reckless disregard, due caution and circumspection, and all other matters relative to the crime of involuntary manslaughter including the meaning of 'without due caution and circumspection,' '' but the court refused on the ground that the instruction was not justified by the evidence.

We know the verdict of the jury. The ground for the motion for a new trial was:

''That the jury which served in this case, . . . in weighing the evidence to determine the guilt or innocence of the defendant, concluded that the crime committed was that of involuntary manslaughter, but in the belief that it could not enter such a verdict and as all of them thought that all they could do was to convict the defendant of murder in the second degree, they did so convict him, thus prejudicing the rights of the defendant in this case.''

There was attached to the motion a sworn declaration of three members of the jury reading as follows:

"That the verdict of murder in the second degree was entered under the impression that we had no authority, or were forbidden by law, to give any other verdict; but that, when weighing the evidence, all the undersigned agreed that it did not justify necessarily a verdict of murder in the second degree but one of involuntary manslaughter because the defendant was shooting into the air killing Rufino Bosque accidentally and without purpose or intent to do so. We also declare that had we thought that a verdict in accordance with the evidence could be given, we would have entered a verdict of involuntary manslaughter."

In overruling the motion the court expressed itself in part as follows:

"In the present case we remember perfectly well that when the jury returned to the courtroom and rendered their verdict, we repeatedly asked the jury whether or not the verdict entered was the unanimous verdict of the twelve gentlemen of the jury and the verdict of each one of them in particular. They all answered in the affirmative. There was not objection to the verdict. No one asked for a roll call of the jury so that each member should express his verdict. We must assume that the law was complied with. But going deeper into the merits of this motion for a new trial which we are considering, the rule as to the verdict of a jury and to the power of the court not to disturb it is thoroughly discussed in 27 R.C.L. 897 and 898. The rule that a court of justice upholds a verdict if it is convinced that it was not reached by chance or surprise or by some other means that might render it invalid, is based on public policy. The cases of *People* v. *Holmes,* 118 Cal. 444; *People* v. *Kloss,* 115 Cal. 577 and *People* v. *Kromphold,* 174 Cal. 512 are directly in point. There is another case which considers the scope of the writ of error *coram nobis,* existing in California, and which upholds the above stated theory grounded on sound reasons of public policy and morals. We merely refer to it. *People* v. *Reid,* 36 A.L.R. 1435. The affidavit subscribed by three of the gentlemen who formed part of the jury wherein they express their personal point of view, does not alter our opinion nor induces us to disregard the adjudicated cases."

We think that the court acted correctly under the attendant circumstances in overruling the motion for a new trial.

This Supreme Court in the.case of *People* v. *Lebrón*, 47 P.R.R. 408, speaking through Mr. Justice Hutchison said:

"Isidoro Lebrón was convicted of murder in the second degree. His motion for a new trial, based on subdivisions 5 and 6 of section 303 of the Code of Criminal Procedure, was overruled.

"Subdivision 4 of that section provides for the granting of a new trial 'when the verdict has been decided by lot, or by any means other than a fair expression of opinion on the part of all the jurors.' Attached to the motion for a new trial was an affidavit of one of the jurors to the effect that in his belief,· opinion and judgment, the accussed was guilty of manslaughter, not of murder in the second degree, but that contrary to this belief, opinion and judgment he had, because of his inexperience, joined the other jurors in returning a verdict of murder in the second degree. It was not the intention of the Legislature in subdivision 4 to permit a juror, by such an affidavit, to impeach his own verdict arrived at in the usual way by unanimous consent, without coercion or extraneous influence. Such a verdict is a 'fair expression of opinion on the part of all the jurors,' within the meaning of that subdivision."

The first error assigned is without merit, and so is the second.

██ We know the evidence. Involuntary manslaughter is the unlawful killing of a human being without malice, in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution or circumspection. Section 203 of the Penal Code.

Involuntary manslaughter as defined by Wharton in his work on Homicide, 3rd edition, paragraph 211, cited in *Tharp* v. *State,* 137 S.W. 1097, is an involuntary killing done without any design, intention or purpose of killing, but in the commission of some unlawful act, or in the improper performance of some lawful act.

The definition is substantially similar to the one in our statutes and is not actually applicable to the facts of this case.

In every crime there must exist a union or joint operation of act and intent or criminal negligence. The intention is manifested by the circumstances connected with the offense and the sound mind and discretion of the accused. All persons are of sound mind who are neither idiots, nor lunatics, nor affected with insanity. A malicious and guilty intention is presumed from the manner and deliberation with which an unlawful act is intended or committed for the purpose of injuring another. Sections 11 and 12 of the Penal Code.

Here the defendant arrived at the place just as a baptism and a dance had been held when the quarrel which seems to have taken place there was over, and when the people were only commenting about it. Everything was quiet. No one called him. It was not shown that it was his duty to be there; and bragging that he was a "tough guy" (*guapo*), the boss, the terror of "La Zona," he fired his revolver, a deadly weapon, right and left, though he knew that there were many people around him.

His acts fail to show any deliberate intent to kill any human being in particular, but this is not the case where a person disturbs the public peace by shooting into the air, but the case of a man who fired his deadly weapon in a manner which shows that he knew that he might wound or kill one of the persons around him, and notwithstanding that fact, without any provocation or justification, persists in his criminal behavior until a human being falls mortally wounded.

Nor is this the case of a person who performs a lawful act, for example, driving an automobile, without due caution and circumspection, and causes the death of a human being.

Unless counsel for the defense had shown that the defendant was an idiot, a lunatic or a person affected with insanity, which fact was not shown or even alleged, it must be presumed that he was of sound mind and under such a presumption the only conclusion that can be reached is that he wilfully committed said act with a knowledge of its conse-

quences, and he is responsible for the malicious death he caused.

In McClain's "On Criminal Law" (vol. 1, sec. 323) cited in *People* v. *Suesser,* 142 Cal. 354, 366, it is said:

"In determining the criminality of the act of killing it will be immaterial whether the intent was to kill the person killed or whether the death of such person was the accidental or otherwise unintended result of the intent to kill some one else—the criminality of the act will be deemed the same."

It is true that here, as we have already stated; not only the intention to kill the deceased was not shown, but the intention to kill somebody else in particular was not shown either. However, as it has been proved that the defendant, in shooting as he did while surrounded by human beings, knew that he might kill, as he did kill one of them, the malicious and deliberate intention to kill is evident.

Such being the case, the judge was not bound to give the instruction requested.

The judgment appealed from must be affirmed.

Mr. Justice Hutchison dissented.

Mr. Justice Córdova Dávila took no part in the decision of this case.