[Civ. No. 896.   Second Appellate District.—January 9, 1911.]

C. R. VANCE, Respondent, v. SUPREME LODGE OF THE FRATERNAL BROTHERHOOD, a Corporation, Appellant.

FRATERNAL INSURANCE—ORGANIZER OF LODGES EMPLOYED BY SUPREME LODGE—COMPENSATION—PERCENTAGE OF ASSESSMENTS—MONTHLY STATEMENTS—ACCOUNTS STATED.—Where the supreme lodge of a fraternal brotherhood, insuring its members on the assessment plan, employed an organizer of subordinate lodges, with a compensation consisting of a percentage of assessments received from their members, monthly statements of which were reported to him by the supreme lodge, which were accepted by the organizer as correct, such state-

ments constituted accounts stated between the parties, the correctness of which can afterward be questioned only upon a sufficient showing of fraud or mistake.

ID.—NATURE AND EFFECT OF ACCOUNT STATED.—An account stated, being an agreed balance of accounts examined and accepted by the parties, implies an admission that the balance is due and owing from the one party to the other; and its effect is to establish *prima facie* the accuracy of the items without other proof, and to constitute a new contract on which an action will lie.

ID.—EFFECT OF MISREPRESENTATION—RELATIONS OF PARTIES—TRUST AND CONFIDENCE.—While the misrepresentation by a debtor to the creditor of the amount due, where no relation of trust or confidence exists, requiring a full disclosure of the facts to be made, is not ordinarily considered as a fraud upon the creditor, which entitles him to re-examine an account stated, yet where any relation of trust and confidence exists between the parties which demands that the information communicated respecting the subject of their dealings be full and complete, any concealment or misrepresentation will amount to a fraud sufficient to entitle the party injured thereby to an action for re-examination of an account stated.

ID.—RELATION OF PRINCIPAL AND AGENT—SUPREME LODGE AGENT OF ORGANIZER TO OBTAIN KNOWLEDGE OF ASSESSMENTS.—Under the contract between the parties, the supreme lodge was the agent of the organizer to obtain and furnish accurate and full information as to the assessments received from subordinate lodges as the basis of his compensation, and he had the right to rely upon the correctness and truthfulness of their statements as to the amount of assessments collected therefrom, and notwithstanding he might have inspected the books in the office of the supreme secretary of defendant, he was not required to do so, and if they misrepresented the facts, plaintiff is not bound by the accounts stated, and upon discovery of the facts may sue to have the accounts opened and re-examined.

ID.—EXCUSABLE FAILURE TO MAKE INQUIRY.—When no duty was imposed by law upon the plaintiff to make inquiry, and where, under the circumstances, "a prudent man" would not be put upon inquiry, the mere fact that means of knowledge are open to him, and he has not availed himself of them, does not debar him from relief on the ground of fraudulent concealment, when he shall thereafter make actual discovery thereof.

ID.—ACTION BASED ON FRAUDULENT CONCEALMENT NOT BARRED—DISCOVERY OF FRAUD.—Where there is a fraudulent concealment by the defendant of the cause of action to set aside accounts stated, and to have them re-examined, the statute of limitations is not set in motion until the plaintiff has discovered or is chargeable with the discovery of the fraud, and where three years have not elapsed from the discovery, the action is not barred.

ID.—ACTION NOT WAIVED BY SUBSEQUENT RECEIPTS OF MONEY.—It is
    held, in view of the facts, that the cause of action was not affected
    by the subsequent receipts of money from the defendant by the
    plaintiff.

APPEAL from a judgment of the Superior Court of Los
Angeles County, and from an order denying a new trial.
Frank F. Oster, Judge presiding.

The facts are stated in the opinion of the court.

C. A. Post, R. W. Kemp, and Davis, Kemp & Post, for Appellant.

Frank James, and Smith & Smith, for Respondent.

JAMES, J.—An appeal is taken from a judgment entered
in favor of plaintiff for the principal sum of $1,770, and from
an order denying a motion made by defendant for a new trial.

Defendant is a fraternal insurance organization. In July,
1900, it employed plaintiff as a general organizer of the order.
Among other duties, plaintiff under his contract was required
to organize and institute lodges, secure members therefor and
instruct the officers thereof. The contract of employment was
in writing and contained a clause providing for the compensation to be paid plaintiff as follows:

"7. My compensation to be certificate registration and charter fees of all members secured by me or persons working
under me and 50% first twenty-four (24) assessments paid by
said members; to be paid monthly by supreme secretary, when
received by him."

Plaintiff entered upon the employment under the terms of
the agreement and continued therein until July, 1905. During the period of his service a statement was sent him each
month from the office of the supreme secretary showing what
moneys were due him at the several dates which the statements bore. On these statements, under a heading of "Suspended, died, or for whom commission is all paid," a list of
names of persons who had been brought into the order through
plaintiff's efforts would be appended. Under his contract
plaintiff was entitled to have apportioned to him one-half of
all assessments collected from members whom he had per-

suaded to join the order for the first twenty-four months of their membership. If such a member died or was suspended, no further credit was given to plaintiff on account of assessments, for in that case payment of assessments would cease upon the death or suspension of the member. So when plaintiff examined the monthly statements sent to him from the supreme secretary's office, he would be informed that certain members had either been suspended, died, or that the full amount of commissions to which he was entitled on their account had been paid. The statements, however, would not apprise him as to what the exact case was; that is, whether the members named therein had been suspended, or whether they had died, or whether they belonged to the class on account of whom he had been paid his full commissions. Accompanying each of the monthly statements was a check for the balance shown to be due plaintiff. These checks were regularly accepted and cashed by the plaintiff. After June, 1902, defendant in rendering statements made allowances on account of commissions due on but twelve assessments collected from members procured by plaintiff, instead of twenty-four assessments, regardless of whether or not the member had continued in the order. The statements did not disclose this change in any other way than that there would appear under the heading mentioned the names of members whenever the twelve assessments had been collected and one-half the amount thereof had been credited to plaintiff's account. In April, 1906, plaintiff for the first time discovered that the statements rendered to him after June, 1902, were incorrect, and that a considerable sum of money by way of commissions on assessments which his contract provided should be paid to him had not been paid. After negotiating for a number of months with the defendant in the endeavor to secure an adjustment of the dispute, he brought this action in February, 1908. In his complaint he set out the history of his employment with defendant and the manner of making settlements. He further alleged the facts respecting the furnishing to him of incorrect statements and of his failure to discover the same until April, 1906. Defendant in its answer alleged and sought to prove that the reason why no credits were given plaintiff after June, 1902, on account of more than twelve assessments collected from the members, was because the contract of employ-

ment between defendant and plaintiff was modified at that time, and that under such modified contract plaintiff was only entitled to credit for one-half of twelve assessments, instead of one-half of twenty-four assessments. The court found against the defendant on this issue, and that finding having been made on conflicting testimony, its correctness cannot be here questioned.

The statements rendered by defendant to plaintiff each month, showing the amount credited to him on the books of defendant, when received and accepted as correct, constituted accounts stated between the parties, the correctness of which could afterward be questioned only upon a sufficient showing of fraud or mistake. "An account stated is defined by Bouvier to be 'an agreed balance of accounts; an account which has been examined and accepted by the parties.' It implies an admission that the account is correct, and that the balance struck is due and owing from one party to the other. And its effect is to establish *prima facie* the accuracy of the items without other proof, and to constitute a new contract on which an action will lie. (*Auzerais* v. *Naglee*, 74 Cal. 60, [15 Pac. 371].) Judge Story says: 'If there has been any mistake, or omission, or accident, or fraud, or undue advantage, by which the account stated is in truth vitiated, and the balance is incorrectly fixed, a court of equity will not suffer it to be conclusive upon the parties, but will allow it to be opened and re-examined.' 1 Story's Equity Jurisprudence, sec. 523; 1 Wait's Actions and Defenses, 195." (*Green* v. *Thornton,* 96 Cal. 72, [30 Pac. 965].)

The misrepresentation by a debtor to a creditor of the amount due, where no relation of trust or confidence exists requiring a full disclosure of facts to be made, is not ordinarily considered as a fraud upon the creditor which entitles him to a re-examination into the correctness of the account which, by his acquiescence, has become stated. Where both parties are dealing at arm's-length, no duty rests upon the debtor to disclose facts which the creditor may obtain knowledge of by the exercise of due diligence. A concealment, or even misrepresentation, will not in such a case amount to a fraud which will entitle the creditor to have an account stated reopened after settlement. It is very uniformly held, however, that where any relation of confidence and trust exists

between the parties which demands that the information communicated respecting the subject of their dealings be full and complete, any concealment or misrepresentation will amount to fraud sufficient to entitle the party injured thereby to an action. The contract between plaintiff and defendant created here the relation of principal and agent. Upon the agent, because of the existence of such relation, there was the duty of informing his principal fully and correctly regarding all matters concerned in the business then being transacted under his contract of agency. The course of business by which the money was collected from members whom plaintiff had brought into the defendant order required that remittances should come from the subordinate lodges to which such members were attached to the office of the supreme secretary. The books in the secretary's office, if properly kept, would furnish at all times the best source of information as to what moneys had actually been collected on account of assessments, etc. Necessarily, plaintiff was obliged to rely upon the records kept by defendant for his information as to what commissions he was entitled to on account of assessments collected. He might, it is true, as the evidence shows, have examined the books himself, but he was not required so to do, because the defendant proposed by its action in that regard taken to, and it did pretend to, furnish him statements of what its books showed, and these statements plaintiff undoubtedly had the right to assume correctly represented the facts. The case presented is not one where the parties are to be considered as dealing at arm's-length, but one where, because of the existence of a confidential relation, neither party could, without incurring liability therefor, misrepresent to the other any condition which it was important for the other party to be advised of. (*Calmon* v. *Sarraille*, 142 Cal. 642, [76 Pac. 486].) Plaintiff here can properly be denominated as coming within the rule declared in *Tarke* v. *Bingham*, 123 Cal. 166, [55 Pac. 760], where it is said: "Where no duty is imposed by law upon a person to make inquiry, and where under the circumstances 'a prudent man' would not be put upon inquiry, the mere fact that means of knowledge are open to a plaintiff, and he has not availed himself of them, does not debar him from relief when thereafter he shall make actual discovery. The circumstances must be such that the inquiry becomes a duty,

and the failure to make it a negligent omission.'' It might have been possible for plaintiff to have ascertained himself, from the different lodges to which the members whom he had introduced into the order belonged, just how many and which ones had remained in the order and continued to pay assessments, but he was under no obligation so to do. The defendant would no doubt have insisted that no commissions became payable at all until money collected on assessments had actually been returned to the home office. The contract of plaintiff, in fact, provided that his compensation was ''to be paid monthly by supreme secretary, when received by him.'' The defendant, as before suggested, had the best means of information regarding these matters, and it made statements to the plaintiff which purported to set forth the truth. If they did not so state the facts, plaintiff would not be bound by the result of the error.

The plea of the statute of limitations was not well taken. Where there is a fraudulent concealment of a cause of action existing in favor of another, the statute is not set in motion until the party in whose favor such action has accrued discovers its existence. To quote from Cyclopedia of Law and Procedure, volume 25, pages 1213, 1214: ''The general statement of the rule as to the effect of a fraudulent concealment of a cause of action, where such rule is applicable, is that when a party, against whom a cause of action exists in favor of another, by fraud or concealment prevents such other from obtaining knowledge thereof, the statute of limitations will commence to run only from the time the cause of action is discovered, or might have been discovered by the exercise of diligence.'' Here the plaintiff did not discover until April, 1906, that there had been concealed from him the knowledge of the collection of assessments for which no accounting was made to him for his proportion thereof. The only statute of limitations applicable, and which then commenced to run, is section 338, Code of Civil Procedure, which provides for a three years' limitation. Subdivision 4 of that section reads as follows: ''4. An action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.'' By the express provisions of this section three years' time is allowed

after the discovery of the fraud within which to commence the action. Plaintiff could not be charged with laches if he brought his action at any time within the three-year period.

It appeared that subsequent to the discovery of the alleged misrepresentation respecting the amount of money due to plaintiff, he accepted several more statements and signed check vouchers therefor in receipt of the money shown by them to be to his credit. It is claimed that by accepting these subsequent statements and receiving and receipting for the remittances accompanying the same, plaintiff estopped himself from questioning any of the matters in any of the accounts made up at or preceding the date of the receipt of such statements and checks. The evidence shows that it was not the intention of the parties to make these latter receipts binding as a settlement of the disputed accounts, for it appears that for a long period of time the question of the adjustment of plaintiff's claim against defendant had been the subject of consideration by the officers of the latter, and that after the expiration of a number of months a committee reported adversely to the allowance of the demand of plaintiff, and it was then finally rejected. The president of defendant testified that it was not his intention at the time the last statements and vouchers were sent to have them treated as an expression of final settlement between the defendant and plaintiff.

The judgment and order are affirmed.

Allen, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 10, 1911.