[Civ. No. 4362. Second Appellate District, Division One.—December 4, 1924.]

## DWIGHT WHITING et al., Copartners, etc., Appellants, v. GUISEPPI SQUEGLIA, Respondent; JOE BOZZANI et al., Cross-defendants and Appellants.

[1] CLAIM AND DELIVERY—SALE OF AUTOMOBILE—CROSS-COMPLAINT FOR FRAUD—CONFLICTING EVIDENCE—FINDINGS—APPEAL.—In this action in claim and delivery to recover an automobile sold by plaintiffs' assignors to defendant in which defendant cross-complained against plaintiffs and their assignors for damages for fraud in the sale of said automobile, the answer and cross-complaint of defendant having contained an appropriate allegation to the effect that plaintiff's assignors were guilty of fraud practiced upon defendant, in that representations were made to defendant that the automobile was new and in first-class mechanical condition, whereas said automobile was second-hand and in need of much repair, and the evidence on behalf of defendant having been substantial in character, ample in quantity, and apparently of a reliable nature, and the jury in the first instance, and later the court, having given credence to defendant's evidence, as against the conflicting evidence introduced on behalf of plaintiffs and the cross-defendants, the conclusion thus reached was conclusive on appeal.

[2] ID.—RELIANCE UPON REPRESENTATIONS—LATENT DEFECTS—OPPORTUNITY TO EXAMINE—ESTOPPEL.—Defendant and the cross-defendants (the vendors) having been fellow-countrymen, to wit, Italians, and the automobile in question having been an Italian car, and defendant having been "an easy victim" in that naturally he was impressed with a feeling of confidence and pride in the matter, and the defects in the mechanism of the automobile, if not hidden and latent, were of such a character that their existence was extremely difficult, if not impossible, for an unskilled person to discover, and the statements made by the vendors having been positive regarding the newness of the automobile and its general condition, defendant was justified in relying upon such representations, and the fact that he had an opportunity to inspect the car did not estop him from complaining of the fraud practiced upon him.

[3] ID.—WRITTEN CONTRACT—MERGER OF REPRESENTATIONS—FRAUD OF VENDORS.—The fact that the agreement for the sale of the auto-

2. See 24 R. C. L. 173.

3. Parol evidence to show warranty outside of contract, note, 5 Am. St. Rep. 197. See, also, 10 R. C. L. 1027.

mobile contained a clause to the effect that all representations
were merged in the written contract did not preclude defendant
(the vendee) from showing the fraud on the part of the vendors.

[4] ID.—DEMAND FOR JURY—DETERMINATION OF SPECIAL ISSUES —
FINDINGS—ERROR WITHOUT PREJUDICE.—In such action in claim
and delivery to recover an automobile sold by plaintiffs' assignors
to defendant, in which defendant cross-complained against plain-
tiffs and their assignors for damages for fraud in the sale of
said automobile, the error, if any, of the trial court in granting de-
fendant's demand for a jury (which was not permitted to pass
upon the ultimate result of the action, but was called upon solely
to determine the facts relative to certain special issues sub-
mitted to it) was cured by the court's findings in which the
answers given by the jury were adopted by the court as the findings
of the court.

[5] ID. — FRAUD — FINDINGS — JUDGMENT — SECURITY FOR RETURN OF
PAYMENT MADE—RIGHT TO POSSESSION OF AUTOMOBILE.—In such
action, the trial court having determined that plaintiffs' assignors,
but not plaintiffs, were guilty of fraud and misrepresentation in
the sale of the new automobile to defendant, justifying the action
of the latter in rescinding the contract, that the old automobile
defendant had turned in on the purchase price of the new
machine (defendant having made no cash payments) was of a
certain cash value, and that defendant was entitled to recover
said amount of cash, together with his costs, from plaintiffs' as-
signors (who were cross-defendants in the action), it was not
error to further adjudge and determine that plaintiffs should
not become entitled to the possession of the new machine unless
and until defendant recovered or was paid the said sum of
money, together with his costs, but that defendant was entitled to
hold and retain possession of said new automobile until he
recovered or was paid said sums.

[6] ID. — VERDICT ON SPECIAL ISSUES — SUBSEQUENT JUDGMENT ON
COURT'S FINDINGS—RECOVERY OF COSTS BY DEFENDANT—TIME FOR
FILING COST BILL.—The judgment not having been based entirely
upon the verdict or findings of the jury on certain special issues of
fact, but having been based upon the findings of the court (which
adopted the findings of the jury and added thereto additional
findings) and the conclusions of law thereon, and defendant's
cost bill having been served and filed within five days after
notice of the decision of the court which directed that defendant
recover his costs against the cross-defendants, the trial court
did not err in allowing defendant his costs in the action.

[7] ID. — PLEADING — EQUITABLE  ISSUES — JUDGMENT — COSTS. —The
action, as originally instituted, having been in claim and delivery
to recover the automobile, but the main issue in the controversy

---

6.  See 7 Cal. Jur. 292.

having been whether or not plaintiffs' assignors had made material representations upon which defendant relied and which induced him to purchase the automobile in question (which issue was raised by defendant's cross-complaint), and that issue having been determined in favor of defendant and he having been awarded the relief for which he prayed, including judgment for his costs in the action, the trial court did not err in striking plaintiffs' cost bill from the files and allowing defendant his costs in the action, although the judgment apparently ran in favor of plaintiffs also.

[8] ID.—MISUNDERSTANDING OF INSTRUCTIONS—IMPEACHMENT OF VERDICT.—Jurors may not impeach their verdict by affidavits to the effect that, in answering the special interrogatories, they did so under a misunderstanding of the instructions given by the court.

---

(1) 4 C. J., p. 859, n. 7. (2) 26 C. J., p. 1142, n. 14, p. 1151, n. 84, p. 1152, n. 87, 88, p. 1153, n. 93, p. 1154, n. 99, 1. (3) 22 C. J., p. 1217, n. 66. (4) 4 C. J., p. 950, n. 69; 27 C. J., p. 68, n. 25. (5) 35 Cyc., p. 519, n. 8 New. (6) 15 C. J., p. 181, n. 19. (7) 15 C. J., p. 25, n. 59. (8) 38 Cyc., p. 1903, n. 64, 65.

APPEAL from a judgment of the Superior Court of Santa Barbara County. S. E. Crow, Judge. Affirmed.

The facts are stated in the opinion of the court.

Andreani & Haines and John L. Bisher, Jr., for Appellant.

W. P. Butcher, Jr., and E. W. Squier for Respondent.

HOUSER, J.—The essential facts of the controversy herein may be briefly stated as follows: By a written conditional sales contract Joe Bozzani and A. Bozzani, doing business as copartners under the firm name of Bozzani Motor Car Company, agreed to sell to Guiseppi Squeglia, and said Squeglia agreed to buy from said Bozzani Motor Car Company, a Fiat automobile for the sum of $6,250. In partial payment therefor Squeglia gave to Bozzani Motor Car Company a Cole automobile at the agreed value of $3,500. The balance of the purchase price of the Fiat automobile was to be paid in monthly installments. The Fiat was delivered into the possession of Squeglia, but it was agreed that the title to the automobile was to remain in the seller until the purchase price had been paid. Bozzani Motor Car Company assigned

---

8. Impeaching verdict by affidavits of jurors, notes, 12 Am. Dec. 143; 24 Am. Dec. 475; 48 Am. Dec. 376.

and transferred its rights under the contract to plaintiffs Dwight Whiting and George N. Whiting, doing business under the firm name of Whiting Brothers. The first monthly installment on the balance due on the automobile not having been paid, an action in claim and delivery was brought by plaintiffs against defendant Squeglia to recover possession of the automobile. Defendant answered the complaint and, by stipulation of the parties to the original action, filed a cross-complaint against plaintiffs and Bozzani Motor Car Company in which fraud was alleged to have been practiced by Bozzani Motor Car Company in the sale of the car, and damages were demanded on account thereof.

The case was tried before the court sitting with a jury, to which were submitted special issues, the answers to which in substance being that the said automobile was worth the sum of $6,250; that not until after the sale of the automobile was made to defendant did the firm of Whiting Brothers in any way become interested either in the ownership of the automobile, or in the contract for the sale thereof; that the contract for the sale of said automobile was assigned to Whiting Brothers after the sale of said automobile was made to defendant; that Squeglia was induced to enter into said contract by reason of fraud practiced upon him; that Squeglia rescinded the said contract; and that he had suffered no damage by reason of the said fraud of Bozzani Motor Car Company other than the loss of his Cole automobile which was given in part payment of the Fiat automobile.

On defendant Squeglia's motion for a judgment on the verdict, the cause was submitted to the court for decision, with the result that the findings by the jury on the special issues were adopted by the court as its own partial findings and, in addition thereto, the court made further material findings of fact, and ordered judgment thereon in favor of said defendant Squeglia to the effect that he was entitled to retain possession of said Fiat automobile until he was paid the sum of $3,500, with his costs of action.

The principal point made by appellants for reversal of the judgment is that the evidence is insufficient to justify the verdict of the jury or the decision by the court.

[1] The answer and the cross-complaint of defendant Squeglia included an appropriate allegation to the effect that Bozzani Motor Car Company was guilty of fraud practiced upon defendant Squeglia in that, through its agent, repre-

sentations were made to defendant that the Fiat automobile was new and in first-class mechanical condition; whereas, as a matter of fact, the said auto was second-hand and in need of much repair. Bozzani Motor Car Company, far from denying its alleged representations as to the newness of the automobile and its perfect mechanical condition, attempted to show the truthfulness of such statements. The evidence on the part of defendant Squeglia was very much to the contrary; indeed, as to nearly every material fact in the controversy, the evidence given by plaintiffs and cross-defendants was decidedly conflicting with that given by defendant Squeglia. An examination of the record shows that on behalf of said defendant it was substantial in character, ample in quantity, and apparently of a reliable nature. The jury in the first instance, and later the court, was thus called upon to determine to which of the opposing sides should be given credence. That in such circumstances the conclusion thus reached on the facts cannot be here disturbed is so well established by the decisions of the courts of last resort that it is deemed unnecessary to cite a list of cases to that effect.

[2]  The point is made (without conceding the fact) that even though the Fiat automobile was second-hand and was in bad repair at the time defendant purchased it, because before defendant purchased the automobile, he had ample opportunity to inspect it, both personally and by other persons, defendant cannot now complain that he was defrauded. The testimony, however, given by defendant and upon which the jury and the court were authorized to reach a conclusion was to the effect that defendant relied upon the representations made to him by the Bozzani Motor Car Company, and that he made no independent examination or investigation of the automobile. Nor in the circumstances of the case was defendant required to do so. Aside from the fact that the evidence showed that the seller and the buyer of the automobile were fellow-countrymen, to wit, Italians, and that the automobile in question was an Italian car, and, consequently, that defendant was "an easy victim" in that naturally he would be impressed with a feeling of confidence and pride in the matter—as testified to by defendant's witnesses, it appears that the defects in the mechanism of the automobile, if not hidden or latent, were of such a character that their existence was extremely difficult, if not impossible,

for an unskilled person to discover. Defendant testified that he relied absolutely upon the representations made to him by the agent of the Bozzani Motor Car Company. The statements made by the seller were so positive regarding the newness of the automobile and its general condition that the buyer was justified in relying upon them. (*Spreckels* v. *Gorrill*, 152 Cal. 383 [92 Pac. 1011]; *Vance* v. *Supreme Lodge*, 15 Cal. App. 178 [114 Pac. 83]; *Tarke* v. *Bingham*, 123 Cal. 163 [55 Pac. 759].)

In the case of *Morbrose Investment Co.* v. *Flick*, 187 Mo. App. 528 [174 S. W. 189], the sale of a second-hand automobile was the subject of the action. The agent of the seller had represented to the buyer that the automobile had been rebuilt and was in as good condition as a new car; that by "rebuilding" he meant taking the car apart and repairing and replacing worn parts that were not as good as new, and reassembling and readjusting the parts so that they would work together as a perfect machine. Several months after the sale was made the purchaser discovered that the automobile had not been rebuilt, but, to the contrary, that it had many worn and defective parts in its engine and machinery. With reference to the doctrine that in the purchase of personal property the purchaser who has a reasonable opportunity of inspection thereof cannot be heard to complain of defects therein which are ordinarily discoverable to one who exercises common prudence, the court said: "*Caveat emptor* does not apply to hidden defects which are not open to discovery by a vendee who exercises reasonable care in the examination and testing of the subject matter of the negotiation. As to such defects, he is entitled to rely upon representations of soundness made by the vendor, and the latter will not be heard to say that the vendee should not have believed him." (See, also, *Roseman* v. *Canovan*, 43 Cal. 110, 119.)

In *Kell* v. *Trenchard*, 142 Fed. 16 [73 C. C. A. 202], which was an action for damages based upon fraud in the sale of a sawmill, railroad, and land with standing timber, the rule is laid down (syllabus) that "the doctrine of *caveat emptor* has no application to cases of actual fraud in representations made by a vendor to a vendee respecting material facts, and in the belief of and upon the faith of which the vendee acts."

70 Cal. App.—8

The case of *Mooney* v. *Cyriacks,* 185 Cal. 70 [195 Pac. 922], also involved the sale of an automobile. [3] It is there held (as against appellants' further contention here) that because the agreement for the sale of the automobile contained a clause to the effect that all representations were merged in the written contract did not preclude the person to whom the automobile was sold from showing fraud on the part of the seller.

[4] Appellants urge that the court erred in submitting to the jury questions of law arising out of a suit in equity. The action as originally filed was one in claim and delivery. By the allegations contained in the answer and in the cross-complaint an element of fraud was injected therein. A jury trial was demanded by the defendant and neither of the other parties to the action objected thereto. The jury, however, was not permitted to pass upon the ultimate result of the action, but was called upon solely to determine the facts relative to certain special issues which were submitted to it, among which were whether or not defendant was "influenced to enter into the contract of sale through or by fraud," and, if so, whether or not he rescinded the contract. Each of said questions was answered by the jury in favor of defendant's allegations. No complaint is made that the jury was not fully and fairly instructed as to what constituted fraud and what acts must have been performed by defendant in order that he might lawfully rescind the contract. But even if it might be conceded that the defendant was not entitled as a matter of law to have the jury pass upon such questions, the error, if any, was cured by the court's findings in which the answers given by the jury to the questions to which objection is made were adopted by the court as the findings of the court.

It is held in *Wallace* v. *Skinner,* 15 Wyo. 233 [88 Pac. 221], that a special question submitted to a jury as to whether or not the plaintiff therein was "induced by fraud to sign a certain release did not call for a conclusion of law by the jury. With reference thereto, the court said: "It is urged that the ninth question ('Did Mr. Sackett fraudulently induce plaintiff to sign the release in question?') called for a conclusion of law. We do not think the question is subject to that objection. It did require the jury to apply to the evidence the law given to them in the instructions, and

thereby determine whether the plaintiff was fraudulently induced to sign the release. But that was their duty, in the absence of the direction for a special finding. Whether or not fraud had been practiced in obtaining plaintiff's signature to the release was primarily a question of fact. The jury were told by the court that certain things would constitute fraud. We must presume that the instructions in that regard covered every element of fraud which the evidence rendered proper to be referred to in the instructions.''

Further complaint is made by appellants as to the sufficiency of the evidence to support certain findings made by the court in reference to the fraud alleged to have been practiced upon said defendant. As heretofore stated, an examination of the record herein discloses the fact that, although seriously contradicted, abundant evidence was presented from which the court was legally justified in reaching its several conclusions on the facts of the case.

[5] One of appellants' contentions is that the judgment is against law in that it provides that plaintiffs shall not become entitled to the possession of the automobile in question "unless and until said defendant and cross-complainant recovers or is paid the sum of $3,500, together with his costs as herein ordered and decreed; and that said defendant and cross-complainant is entitled to hold and retain possession of said Fiat automobile until he recovers or is paid said sum of $3,500, together with his costs herein.''

No authority is cited by appellants in support of such contention. It should be noted that, in addition to that part of the judgment to which attention has been directed, the judgment contains the further order "that defendant have and recover of and from cross-defendants Joe Bozzani and A. Bozzani, . . . the sum of $3,500, together with his costs,'' etc.

In the case of *Parker* v. *Funk,* 185 Cal. 347 [197 Pac. 83], which was "one of replevin for the possession of an automobile truck,'' the plaintiff, like the plaintiffs here, was the assignee of a conditional sale contract. According to the findings, the defendant was entitled to certain equities as between him and the person with whom he had contracted regarding the sale of the truck. The plaintiff in the case apparently asserted a right to evade these equities on the ground that the contract was personal as between the vendor

and the vendee, and that plaintiff acquired the contract there in question freed from any equities which the vendee might possess as against the vendor. The judgment of the trial court was "that the plaintiff take nothing and that he either return the part of which he had secured possession or the defendant recover of him the value thereof, three hundred dollars."

After discussing what would have been the legal situation as between the vendor and the vendee had there been no assignment of the contract, the court said: "Is the situation any different as to the actual plaintiff, the vendor's assignee? It is not different unless there be some element of estoppel as between him and the defendant. As an assignee merely, the plaintiff but stepped into the vendor's shoes and took the contract and the title to the articles specified in it subject to any rights which existed in favor of the defendant against the vendor. (Code Civ. Proc., sec. 368.) . . . The result is that a party to a contract may assert as against an assignee of the other party any right which he could assert against the latter, regardless of whether such right conforms or does not conform to the face of the contract. (*Rauer* v. *Fay,* 110 Cal. 361 [42 Pac. 902].)"

Section 368 of the Code of Civil Procedure, to which reference is made, provides that "in the case of an assignment of a thing in action, the action by the assignee is without prejudice to any set-off, or other defense existing at the time of, or before, notice of the assignment; . . . "

See, also, *Stern* v. *Sunset Road Oil Co.,* 47 Cal. App. 334, 343, 344 [190 Pac. 651].

Appellants also urge that the trial court erred in striking plaintiffs' cost bill from the files and allowing defendant his costs in the action. By the judgment of the court plaintiffs were disallowed their costs. On the other hand, the judgment awarded defendant his costs as against Bozzani Motor Car Company. Section 1033 of the Code of Civil Procedure provides in substance that the cost bill must be served and filed "within five days after the verdict, or notice of the decision of the court or referee, or, if the entry of the judgment on the verdict or decision be stayed, then, before such entry is made."

[6] On the return of the verdict by the jury on the special issues which had been submitted to it, on motion made

by defendant for a judgment on the verdict, the final decision of the case was held in abeyance by the court. No formal stay order as such was ever entered as to the judgment which might be applicable to the verdict of the jury on the special issues. Thereafter the court filed its findings of fact in which the several answers to the special issues theretofore made by the jury were adopted by the court as its own findings, to which other findings by the court were added, and it was upon such combined findings that the judgment was ordered. The judgment was not entirely based upon the verdict by the jury, but was founded upon the ultimate findings and the conclusions of law thereon by the court. No complaint is made that defendant's cost bill was not served and filed within five days after "notice of the decision of the court"; and assuming a compliance with such provision of the statute, it must be held that plaintiffs' objection to the filing of defendant's cost bill is not sustainable.

[7] With reference to the order striking plaintiffs' cost bill from the files, section 1022 of the Code of Civil Procedure provides, among other things, in substance, that "costs are allowed of course to the plaintiff, upon a judgment in his favor, . . . in an action to recover the possession of personal property." As heretofore stated, the action was in claim and delivery to which an answer and a cross-complaint were interposed setting up the fraud of plaintiffs' assignor as a reason why plaintiffs should not prevail; but, to the contrary, that defendant should be awarded certain relief. The main issue in the controversy, therefore, was whether or not plaintiffs' assignor had made material misrepresentations, upon which defendant relied and which induced him to purchase the automobile in question. Such issues were determined in favor of defendant, and although the judgment apparently runs in favor of plaintiffs, all of defendant's contentions are sustained by the judgment and he is awarded the relief for which he prayed. The substantial result of the judgment is a victory for defendant.

The statute (sec. 1022, Code Civ. Proc.) which gives to a successful plaintiff the right to his costs in an action to recover possession of personal property, also gives to such a plaintiff a similar right in an action which involves title or possession of real property. In the case of *Weller* v. *Brown*, 25 Cal. App. 216 [143 Pac. 251], in which the title to

certain real property was involved, it was held that where the only material issue in the suit was the existence of an easement in favor of the defendant, as to which judgment was awarded him, the plaintiff, although adjudged to be the owner of the fee, was not entitled to costs. A similar conclusion was reached in the case of *Muzio* v. *Erickson*, 41 Cal. App. 413 [182 Pac. 974], on facts very much like those in the case of *Weller* v. *Brown, supra*. By analogy it would follow that in the instant case plaintiffs are not entitled to their costs. Moreover, on the assumption that in reality defendant was the successful party to the litigation, section 1024 of the Code of Civil Procedure provides that "costs must be allowed of course to the defendant upon a judgment in his favor," etc. Furthermore, if, as contended by plaintiffs on another point in their brief which has already received attention herein, to wit, that although originally an action at law, by the filing therein of defendant's answer and his cross-complaint through which fraud was injected into the case, the action lost its common-law identity and became a suit in equity, then it would follow that under section 1025 of the Code of Civil Procedure, the court was authorized to make the order disallowing costs to plaintiffs. In any event, therefore, it would appear that appellants' contention regarding costs is untenable.

[8] Misconduct of the jury in that one or more of the jurors had been induced to assent to a special verdict by "resort to the determination of chance" is also urged by appellants as a reason for reversal of the judgment. The only evidence to support the charge is contained in the affidavits of four members of the jury to the effect that, in answering the special interrogatories they did so under a misunderstanding of the instructions given to them by the court. The law is well settled that jurors may not thus impeach their verdict. (*Polhemus* v. *Heiman*, 50 Cal. 438; *People* v. *Kloss*, 115 Cal. 568 [47 Pac. 459].)

What heretofore has been said covers and disposes of appellants' remaining point for reversal, to wit, that the court erred in denying the several motions for nonsuit made by plaintiffs and by Bozzani Motor Car Company as to defendant's cross-complaint.

No prejudicial error appearing, it is ordered that the judgment be and the same is affirmed.

Conrey, P. J., and Curtis, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 2, 1925.

All the Justices concurred.