[Civ. No. 9230. Second Appellate District, Division One.—June 12, 1935.]

## WATSON S. ROSE, Appellant, v. DUNK-HARBISON COMPANY et al., Respondents.

Meserve, Mumper, Hughes & Robertson and Timon E. Owens for Appellant.

Lyon, Fleming & Robbins for Respondents.

SHINN, J., *pro tem.*—The court sustained a demurrer to plaintiff's second amended complaint without leave to amend, and entered judgment of dismissal, from which plaintiff prosecutes this appeal. Numerous points were raised by the demurrer, and argument thereon is presented at length in the briefs of counsel. One of the grounds of demurrer was that the action is barred by the provisions of section 338, subdivision 3 of the Code of Civil Procedure, and this defense, we think, is good, and sufficient to support the judgment appealed from.

The action is to recover the value of certain corporate stocks, alleged to have been converted by the defendant, a stock brokerage house. The alleged conversion consisted of the alteration of defendant's books so as to show a certain trading account of defendant's customer, Emmason C. Rose, which was his separate property, to be held in joint tenancy by the customer and his wife, Beatrice S. Rose. Emmason C. Rose died on June 10, 1927, and the alteration of the books,

relied upon as a conversion of the property, is alleged to have been made on or about that date. Beatrice S. Rose was appointed executrix of the decedent's estate July 5, 1927. A decree of distribution was entered in the estate September 26, 1929, distributing to plaintiff herein an undivided one-half ($\frac{1}{2}$) interest in all the estate of said deceased, including the cause of action sued upon herein. Plaintiff did not arrive at the age of majority until June 11, 1931. He alleged in his second amended complaint that he did not learn of the alleged conversion of the stocks by defendant until about the month of October, 1931. He instituted this action June 8, 1932. The time elapsing between the date of the conversion and the entry of the decree of distribution was two years, three months, sixteen days. The time elapsing between the date when plaintiff became of age and the institution of the action was eleven months, twenty-seven days. These two periods, combined, give a period of three years, three months and thirteen days, or three months and thirteen days beyond the statutory period.

It is the contention of appellant that the statute did not commence to run until the month of October, 1931, at which time plaintiff first learned that the stocks were not held in joint tenancy during the life of Emmason C. Rose and of the alleged alteration of defendant's books. The contention of respondent, accepted by the trial court, is that the statute commenced to run on the date of the conversion June 10, 1927; that if it was tolled at all, it could only have been between the date of the decree of distribution and the date of plaintiff's attaining his majority, and that it would run again from the latter date to the date of the commencement of the action. Respondent does not concede that the running of the statute was suspended at any time, but we deem it unnecessary, under the views we entertain, to discuss the argument advanced upon that point. We think it admits of no doubt that the statute commenced to run on the date of the alleged conversion; that if interrupted at all during the period of plaintiff's minority after the decree of distribution was entered, it was again put in motion when plaintiff became of age.

The precise question whether in an action for conversion of personal property, by one who has come into its possession

lawfully, the statute commences to run at the time of the conversion, or only when the owner of the property acquires knowledge of the acts constituting the conversion, has not been decided by our appellate courts.

As a rule, statutes of limitation commence to run when a cause of action is complete. There are well-recognized exceptions to the rule. But the fact that the injured party is without knowledge of the wrong committed, while bringing a case within the exceptions generally recognized in cases of fraud and fraudulent concealment of facts, does not generally toll the statute. A cause of action is not suspended merely because a party is ignorant of the fact that he has a cause of action or of the identity of the one who committed a certain act. (*Lightner Min. Co.* v. *Lane,* 161 Cal. 689 [120 Pac. 771, Ann. Cas. 1913C, 1093]; *Lambert* v. *McKenzie,* 135 Cal. 100 [67 Pac. 6]; *Medley* v. *Hill,* 104 Cal. App. 309 [285 Pac. 891].)

As applied to the case before us, the general rule is stated in 17 Ruling Case Law, 765, as follows: ''The general rule seems to be that where an action is founded merely on a wrongful conversion of goods, the statute of limitations begins to run from the time of the conversion, although it was not discovered by the plaintiff until a later period, the defendant not being shown to have been guilty of a fraudulent concealment of the conversion.'' In other jurisdictions, where the question has been decided, it has been held quite generally that the running of the statute is not affected by the fact that the owner was ignorant of the conversion. (*Smith* v. *Staten Island Land Co.,* 175 App. Div. 588 [162 N. Y. Supp. 681]; *Seymour* v. *Mechanics & Metals Nat. Bank,* 199 App. Div. 707 [192 N. Y. Supp. 588]; *Yore* v. *Murphy,* 18 Mont. 342 [45 Pac. 217]; *Stockmen's State Bank* v. *Merchants' & Stockgrowers' Bank,* 22 Ariz. 354 [197 Pac. 888]; *Johnson* v. *White,* 13 Smedes & M. (Miss.) 584.)

Upon the authority of *Latta* v. *Tutton,* 122 Cal. 279 [54 Pac. 844, 68 Am. St. Rep. 30], *Estate of Rathgeb,* 125 Cal. 302 [57 Pac. 1010], and *Esponda* v. *Kelly,* 57 Cal. App. 766 [207 Pac. 939], appellant asks us to hold that in an action based upon conversion the statute of limitations does not commence to run until the discovery of the acts constituting the conversion.

In *Latta* v. *Tutton, supra,* the action was filed within three years after defendant first claimed ownership of the property and the question of plaintiff's knowledge was not involved. In *Estate of Rathgeb, supra,* and *Esponda* v. *Kelly, supra,* the only acts of conversion shown consisted of a refusal by the party in possession to surrender the property, upon demand, to the rightful owner. It therefore necessarily followed that the statute commenced to run at the time of the refusal, which alone was the act of conversion.

■ It has been decided by our Supreme Court that a cause of action for conversion of personal property arises immediately upon the commission of the acts of conversion. (*Bell* v. *Bank of California,* 153 Cal. 234. [94 Pac. 889].) We believe there is no good reason for holding that the statute is not immediately set in motion. The case does not differ in principle from the general run of actions for the invasion of property rights, and the authorities so holding seem to be quite uniform. In the present case the cause of action arose on or about June 10, 1927, when the defendant is alleged to have altered its records in such a manner as tended to defeat the title of the estate and create an ownership of the stocks in the surviving joint tenant. The statute ran against the estate and consequently against those who took from the estate at least until the date of distribution, and, in any view, it ran also between the date plaintiff became of age and the date the action was commenced, and as we have seen, the total of these two periods was in excess of three years. The action was therefore barred some three months before it was commenced.

Plaintiff tendered a third amended complaint and applied for leave to file it after the demurrer was sustained to the second amended complaint without leave to amend. The application was denied. In this the court committed no error as the facts upon which we have expressed our views are also set forth in the proposed third amended complaint. It is unnecessary to discuss other questions raised by the demurrer and presented in the briefs of counsel.

The judgment is affirmed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 11, 1935, and an applica-

tion by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 9, 1935.