[L. A. No. 19058.   In Bank.   Nov. 21, 1944.]

JOHN W. PASHLEY, Appellant, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation) et al., Respondents.

Daniel A. Knapp for Appellant.

Frank Karr, C. W. Cornell and O. O. Collins for Respondents.

SHENK, J.—Plaintiff appealed from a judgment entered on an order sustaining a demurrer to his complaint without leave to amend. The complaint alleges the following facts:

On September 3, 1930, the plaintiff was a passenger on a streetcar being operated negligently by the defendant. He suffered an injury from glass splinters which pierced the right eyeball. The defendant directed the plaintiff to go to certain eye specialists employed by it. The plaintiff submitted to treatment by the defendant's employed physicians and at defendant's expense. His eye was examined by them and they removed splinters of glass. They stated to him that he must not go to any other physician; that if he did, they would not be responsible; that his eye wounds would heal quickly

and he would have no further trouble; that he was suffering mainly from shock; and that he should return in two years for a final check-up. The plaintiff followed their directions and returned at the end of two years, when he was advised by them that, aside from the need for glasses, the cure was complete and his eye was in perfect condition, when, in fact, they at all times knew that the injury would eventually cause a cataract and the destruction of eyesight.

In October of 1942 the plaintiff perceived for the first time that the vision of his right eye was blurred. On February 5, 1943, he consulted another and independent physician and discovered for the first time that, due to the severance of the cellular system and delicate tissues of the eyeball which occurred at the time of the accident in 1930, and as a proximate result of the injury thereby received, a cataract had completely enveloped the eye and he was totally and permanently blind in the right eye. It is alleged that the defendant's employed physicians knew that the injury would eventually cause a cataract and the destruction of eyesight, but that they falsely and fraudulently made the alleged representations for the purpose and with the intent of preventing the plaintiff from bringing an action within the statutory period of one year; that the plaintiff relied on the defendant's representations and, believing thereby that he was permanently cured, did not consult other physicians sooner and delayed bringing action against the defendant until the discovery of the facts. The action was commenced on June 14, 1943, within one year after the first discovery of the alleged fraud.

By its order sustaining the demurrer, the trial court concluded that the cause of action was barred by section 340, subdivision 3, of the Code of Civil Procedure, providing a one-year period of limitation for the commencement of an action for injury by the wrongful act or neglect of another. The plaintiff relies on the alleged fraudulent concealment to toll the statute.

In resolving the question of the correctness of the court's order the legislative policy in prescribing a period of limitation for the commencement of actions must be borne in mind. ''The statute of limitations is a statute of repose, enacted as a matter of public policy to fix a limit within which an action must be brought, or the obligation is presumed to have been paid, and is intended to run against those who are neglectful

of their rights, and who fail to use reasonable and proper diligence in the enforcement thereof . . . These statutes are declared to be 'among the most beneficial to be found in our books'. 'They rest upon sound policy, and tend to the peace and welfare of society'; . . . The underlying purpose of statutes of limitation is to prevent the unexpected enforcement of stale claims concerning which persons interested have been thrown off their guard by want of prosecution.'' (1 Wood, Limitations, pp. 8-9.)

However, it is provided by statute in this state that when the liability accrues by reason of fraud, the statute will not run until the fraud is discovered. (Code Civ. Proc., § 338, subd. 4.) ▌ Similarly, when the defendant is guilty of fraudulent concealment of the cause of action the statute is deemed not to become operative until the aggrieved party discovers the existence of the cause of action. (*Kane* v. *Cook,* 8 Cal. 449; *Kimball* v. *Pacific Gas & Elec. Co.,* 220 Cal. 203 [30 P.2d 39]. See statutes and cases cited in articles: Dawson, *Undiscovered Fraud and Statutes of Limitation,* 31 Mich. L.Rev. 591, at p. 593, notes; *Fraudulent Concealment and Statutes of Limitation, id.* 875 at 877; also cases collected in *Waugh* v. *Guthrie etc. Co.,* 37 Okla. 239 [131 P. 174, 178, L.R.A.1917B 1253] notes.)

The Kane case is the first in this state to deal with the question of fraudulent concealment in tolling the statute of limitations. There the defendant sold goods consigned to him for sale by the plaintiffs. He neglected to report the sale, and knowledge by the plaintiffs was not acquired until shortly before suit and subsequent to the expiration of the statutory period following the sale. It was said (p. 458) that the neglect of the defendant not only deprived the plaintiffs of their funds but kept them in ignorance of their rights, and to hold that the statute ran against them under such circumstances would be to permit the defendant to take advantage of his own wrong and to sustain a defense which, in conscience, he ought not to be permitted to interpose. After a review of the diversity of opinion the court adopted the rule deemed best in the interest of justice to prevent the perpetration of fraud. It was held (p. 461) : ''that in all cases a fraudulent concealment of the fact, upon the existence of which the cause of action accrues, is a good answer to the plea of the Statute of Limitations.'' In the following additional cases in this state it was held that fraudulent concealment suspended the operation of the stat-

ute: *Lightner Mining Co.* v. *Lane,* 161 Cal. 689 [120 P. 771, Ann.Cas.1913C 1093], involving a secret underground trespass upon real property; *Boyer* v. *Barrows,* 166 Cal. 757 [138 P. 354], fraudulent concealment of collection by an attorney; *Kimball* v. *Pacific Gas & Elec. Co., supra,* fraudulent concealment of person responsible for personal injuries; *Vance* v. *Supreme Lodge,* 15 Cal.App. 178 [114 P. 83], fraudulent concealment of errors in account; *Pacific Employers Ins. Co.* v. *Industrial Acc. Com.,* 66 Cal.App.2d 376 [152 P.2d 501], following *Kimball* v. *Pacific Gas & Elec. Co., supra.*

In *Gregory* v. *Spieker,* 110 Cal. 150 [42 P. 576, 52 Am.St. Rep. 70], involving a secret breach of contract, this court refused to consider the original contract as the obligation to be enforced. It was held that, since the breach thereof was accomplished ''underhandedly, by secret confederacy with another, and the use of his name to cloak the movements of the defendant; and by deceit,'' etc., the fraud charged was not merely for the purpose of excusing delay in the commencement of the action but the deception practiced on one person to the injury of another constituted actionable fraud and the applicable statute of limitations was that providing a period of three years from the discovery of the fraud.

Suspension of the statute has been refused in cases where discovery was late but neither fraud nor fraudulent concealment was involved. (*Gale* v. *McDaniel,* 72 Cal. 334 [13 P. 871]; *People* v. *Melone,* 73 Cal. 574 [15 P. 294]; *Lattin* v. *Gillette,* 95 Cal. 317 [30 P. 545, 29 Am.St.Rep. 115]; *Lambert* v. *McKenzie,* 135 Cal. 100 [67 P. 6]; *Wetzel* v. *Pius,* 78 Cal. App. 104 [248 P. 288]; *Johnson* v. *Nolan,* 105 Cal.App. 293 [288 P. 78]; *Daily Tel. Co.* v. *Long Beach Press Pub. Co.,* 133 Cal.App. 140 [23 P.2d 833]; *Rose* v. *Dunk-Harbison Co.,* 7 Cal.App.2d 502 [46 P.2d 242]; *Bathke* v. *Rahn,* 46 Cal.App. 2d 694 [116 P.2d 640]; *State Comp. Ins. Fund* v. *Industrial Acc. Com.,* *(Cal.App.) [152 P.2d 505].)

It is unnecessary here to distinguish actionable fraud and fraudulent concealment of a cause of action in the application of the time element, for in any event the action was commenced within one year after the alleged first discovery of the fraud.

The defendant contends that in the case of a personal injury resulting from the wrongful act or neglect of another, the cause of action accrues when the breach of duty occurs, and the statute then commences to run. The theory of the

---

*In *State Comp. Ins. Fund* v. *Industrial Acc. Com.,* the Supreme Court granted a hearing on December 4, 1944.

defendant is that since the breach of duty of care and consequent impact followed by injury cannot be concealed, the fraud alleged to have been committed by the defendant cannot result in concealment of the cause of action, and therefore there is no fraudulent concealment within the meaning of the decisions in such cases.

*Kimball* v. *Pacific Gas & Elec. Co., supra,* involved a breach of duty of care resulting in personal injury. Nevertheless this court held that the connivance of the defendant in concealing the person responsible therefor amounted to a fraud which tolled the statute of limitations. (See, also, cases cited in 31 Mich.L.Rev. at p. 914.)

In *Waugh* v. *Guthrie etc. Co., supra,* it was held that the employment of artifice in concealing the cause of an explosion from which the plaintiff sustained injuries amounted to fraudulent concealment which tolled the statute, the plaintiff having been diligent in his efforts to ascertain the cause. The court said: "It is no sufficient answer to say, as have counsel in their brief, that plaintiff must have known that he was blown up, and realized that he was injured. This he undoubtedly knew; but it was the fact that defendant by its negligence was the cause of the injury that gave rise to the cause of action against it, not the mere fact of injury. Upon the trial the party relying on fraudulent concealment of the cause of action to avoid the statute would have the burden of proving such concealment. Following what we believe to be the great weight of authority, and keeping in mind that the very purpose of the statute of limitations was to prevent fraud and not to make it secure and successful, we conclude that the petition stated a good cause of action, and that the trial court erred in sustaining the demurrer."

If the hypothesis of the defendant in the present case were correct, the result in those cases might have been otherwise. The truth is that the plaintiff's right to relief in such cases is not dependent on technical legal definitions. ▮ In reality the ground of relief is that the defendant, having by fraud or deceit concealed material facts and by misrepresentations hindered the plaintiff from bringing an action within the statutory period, is estopped from taking advantage of his own wrong. ▮ The statute of limitations was intended as a shield for his protection against stale claims, but he may not use it to perpetrate a fraud upon otherwise diligent suitors. Thus, in 19 Am. & Eng. Ency., p. 243, it is stated that the "de-

fendant, having, by his own wrongdoing, prevented the plaintiff from instituting his suit, will not be permitted to take advantage of his own wrong by setting up the statute as a defense." (See *Pickens* v. *Merriam*, 242 F. 363, 370 [155 C.C.A. 139], stating that to be the California rule, citing *Kane* v. *Cook*, *supra*.) ▇ And the rule is applicable in this state whether or not the action itself be based on fraud. (*Foster & Kleiser Co.* v. *Special Site Sign Co.*, 85 F.2d 742, 752, citing *Kimball* v. *Pacific Gas & Elec. Co.*, *supra*.)

▇ Technical rules as to when a cause of action accrues apply therefore only in those cases which are free from fraud committed by the defendant. Said section 338, subdivision 4, Code of Civil Procedure, recognizes the nonapplicability of those technical rules where the fraud of the defendant may be so concealed that in the absence of circumstances imposing greater diligence on the plaintiff, the cause of action is deemed not to accrue until the fraud is discovered. Otherwise, in such cases, the defendant, by concealing his fraud, would effectively block recovery by the plaintiff because of the intervention of the statute of limitations. ▇ The same conclusion governs when the defendant under duty of disclosure has concealed known essential facts upon which to base a recovery against him and thereby has hindered the plaintiff from bringing his action until after the statute would otherwise have terminated the period of limitation. We are not here called upon to determine what acts of concealment might under the circumstances be deemed a legitimate hindrance to litigation. Whether in itself it is an actionable fraud or merely suffices to toll the statute on the original obligation, the breach of a duty to disclose known facts with the intention to and which does hinder commencement of an action until the action would be outlawed, is a fraud practiced upon the plaintiff which in conscience estops the defendant's reliance on the statute of limitations. ▇ The cases relied on by the defendant wherein it has been stated that the cause of action accrues at the time of the injury, and that the late discovery of the person responsible therefor or of the extent of the injury does not postpone the commencement of the statutory period, have heretofore been distinguished by this court as cases where fraud and deceit were not involved. (See *Kimball* v. *Pacific Gas & Elec. Co.*, *supra*, at p. 213; *Lightner Mining Co.* v. *Lane*, *supra*, at p. 296. See, also, *Allison* v. *Missouri Power & Light*

*Co.*, (Mo.App.) 59 S.W.2d 771.) In *Johnson* v. *Nolan, supra,* it was held that concealment by an attorney did not suspend the commencement of the statute, following *Lattin* v. *Gillette, supra,* a case which did not involve concealment. This court justified that holding on the ground that the complaint disclosed merely ignorance of the plaintiff and not concealment of the facts by the defendant, saying that otherwise the decision was disapproved. (*Kimball* v. *Pacific Gas & Elec. Co., supra,* at p. 214.)

The defendant relies on two additional cases as support for its position that fraudulent concealment of the extent of the injury cannot amount to fraudulent concealment of facts giving rise to the cause of action. In one, *Maloney* v. *Brackett,* 275 Mass. 479 [176 N.E. 604], the plaintiff sued two physicians for malpractice, alleging fraudulent concealment as excuse for late filing, and the trial court entered judgment on directed verdicts for the defendants. In overruling the plaintiff's exceptions, it was held that the failure of a doctor to disclose a cause of action to a patient could not be found to be a breach of his professional duty without evidence that he knew or believed that a cause of action existed; that there was no evidence that either defendant knew or believed that he had performed or assisted in the performance of an unnecessary operation, and that the prediction as to plaintiff's recovery made before the operation had no tendency to prove that they did not in good faith consider the operation advisable. In the other, *Ogg* v. *Robb,* 181 Iowa 145 [162 N.W. 217], the plaintiff was burned by X-ray treatments administered by the defendant in 1901. The burnt area did not heal but became malignant. In 1915 the plaintiff sued, alleging malpractice and fraudulent concealment by misrepresentations of the temporary character of the burn. A demurrer to the complaint was sustained. In holding that the statute of limitations was not suspended, the court attributed the representation of the defendant regarding the nature of the burn as an expression of opinion only.

On the other hand, the following malpractice cases held that fraudulent concealment would foreclose the defense of the statute of limitations: *Groendal* v. *Westrate,* 171 Mich. 92 [137 N.W. 87, Ann.Cas. 1914B 906]; *Schmucking* v. *Mayo,* 183 Minn. 37 [235 N.W. 633]. In the latter case it was said (p. 633 [235 N.W.]) that in the presence of a fiduciary and confidential relation the fraud may more readily be perpe-

trated, designating that of physician and patient as such relationship, citing *Groendal* v. *Westrate, supra,* and that it was well to bear in mind that the statute does not run against actions for fraud until the fraud is discovered. It was also said (p. 634 [235 N.W.]) : ". . . a person should not be permitted to shield himself behind the statute of limitations where his own fraud has placed him. He should not be permitted to profit by his own wrong, and it would strike the moral sense strangely to permit him to do so. We are not aware of any principle of law or equity which affords immunity to a fraudulent defendant who by his deceitful practice induces a creditor to forbear his efforts to collect his debt until after it has become barred by the lapse of time."

Like *Ogg* v. *Robb, supra, Hudson* v. *Shoulders,* 164 Tenn. 70 [45 S.W.2d 1072], involved a case of burn by X-ray which developed serious and permanent injury. In the Hudson case, however, in reversing a judgment sustaining a demurrer to the complaint, it was held that the allegations showed knowledge by the physician of the probable result and the concealment thereof by false representations whereby the plaintiff "was lulled into ignorant security, and so kept until after the running of the statute." The Ogg case was distinguished as one where the court appeared to have viewed the representation only as an expression of opinion.

In *Peteler* v. *Robinson,* 81 Utah 535 [17 P.2d 244], also malpractice, it was held that the case was not one of tort or breach where the parties stood on an equality and dealt with each other at arm's length, or where each had equal means of knowledge; but that the relationship of physician and patient made the case one of trust and confidence to be reposed in the defendant by the plaintiff, and that the latter had the right to rely on the superior knowledge of the former. The court there reversed a judgment entered on an order sustaining a demurrer to a complaint which alleged the defendant's deceit as a bar to the plea of the statute of limitations. It distinguished those cases where nothing more than unskillful and negligent operation was alleged.

The present is not a case of malpractice, but the decisions relative to fraudulent concealment in such cases are pertinent to establish the relationship between the actors in resolving the question whether the facts alleged must be deemed to have excused the plaintiff's failure to make earlier discovery

and his subsequent delay in commencing the action. As determined in those cases, the confidence growing out of the relationship of doctor and patient imposed upon the physician the duty of refraining from fraudulent concealment, that is, the duty of disclosure when he had knowledge of the facts. If that is the result in malpractice cases, then all the more was the defendant herein under a duty of disclosure when it voluntarily undertook to treat the plaintiff's injuries caused by its own breach of duty. "Even though one is under no obligation to speak as to a matter, if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which will materially qualify those stated. If he speaks at all he must make a full and fair disclosure." (12 R.C.L. § 71, p. 310.) ■ Where there is a duty to disclose, the disclosure must be full and complete, and any material concealment or misrepresentation will amount to fraud sufficient to entitle the party injured thereby to an action. (*Kimball* v. *Pacific Gas & Elec. Co.*, *supra*, at p. 219; *Vance* v. *Supreme Lodge*, *supra*.) ■ Since its voluntary undertaking placed upon the defendant the duty to disclose to the plaintiff the full extent of his injuries and the probable future disability to be expected therefrom, its false representation designed to conceal facts known to it and intended to prevent plaintiff's consulting other physicians and thus hinder him from bringing action until after the running of the statutory period of limitations, must be deemed to amount to fraud upon the plaintiff and to excuse any greater diligence on his part under the facts disclosed by the complaint. No fact as to the plaintiff's condition is alleged which could be deemed to have put him on earlier notice.

■ The only remaining question is whether the defendant was bound by the alleged deceit and misrepresentations of its agents. The facts alleged show that the physicians were employed by the defendant and authorized by it to treat the plaintiff's injuries. The agents' alleged deceit was not intended for their own benefit, but for the pecuniary advantage of the defendant, their principal. If its agents' deceit should succeed, the defendant would reap the pecuniary gain therefrom. Thus its agents have employed the alleged deceit for the sole benefit of the defendant, and in such a case the facts must be deemed to be within the defendant's knowledge. The same principles therefore apply to make it unconscionable

for the defendant to rely upon the bar of the statute. As was said in *Lightner Mining Co.* v. *Lane, supra,* at page 703, the fraud of the agents will be imputed to the principal for the purpose of preventing the running of the statute of limitations whether the principal was aware of it or not. The injustice of allowing such fraud to become successful by reason of lapse of time and concealment is an injustice to the plaintiff, and it is precisely the same in effect and extent whether the fraud is that of the defendant or its agents. The defendant, having received the benefit of its agents' fraud, has no equity in its favor.

The alleged facts show that the defendant voluntarily undertook, through its agents, to make a fair and full disclosure of the plaintiff's injuries; that through its agents it had knowledge of the full alleged extent of the plaintiff's injuries and disability, and was bound by its agents' failure in the discharge of its duty to make full disclosure thereof; that the defendant, by its voluntary undertaking having placed the plaintiff in a position to rely on its representations, thereby lulled him into a sense of security which excused his failure to seek knowledge from independent sources and his delay in commencing the action. We therefore conclude that on the facts alleged the action was timely brought after discovery of the alleged fraud and that the trial court erred in sustaining the demurrer to the complaint.

The judgment is reversed.

Gibson, C. J., Curtis, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.